Oliver I. SABALA, Individually and on behalf of all others similarly situated

v.

WESTERN GILLETTE, INC., et al.

Leonard M. RAMIREZ, Individually and on behalf of all others similarly situated

v.

WESTERN GILLETTE, INC., et al.

Civ. A. Nos. 71–H–961, 71–H–1388.

United States District Court,
S. D. Texas.
Houston Division.

Feb. 26, 1974.

Henry M. Rosenblum, Rosenthal, Didion & Rosenblum, Houston, Tex., for plaintiff Sabala.

Sidney Ravkind, Mandell & Wright, Houston, Tex., for plaintiff Ramirez.

L. G. Clinton, Jr., Fulbright, & Crooker, Houston, Tex., for defendant Western Gillette.

L. N. D. Wells, Jr. and G. William Baab, Mullinax, Wells, Mauzy & Baab, Dallas, Tex., for defendant Internal Brotherhood and Southern Conf.

James P. Wolf, Houston, Tex., for defendant Local 988.

Memorandum and Opinion

SINGLETON, District Judge.

The trial of these cases involving the question of racial discrimination in employment practices was bifurcated and an order concerning jurisdiction and liability entered July 17, 1973, published at D.C., 362 F.Supp. 1142. The hearing on remedies, damages, and costs was held during October and November of 1973.

This supplemental Memorandum and Opinion will treat those subjects only. In the areas of remedies, damages, and costs, this Memorandum and Opinion has enlarged upon that of July 17, 1973, and in those areas will supersede the earlier opinion, when inconsistencies arise.

## REMEDY

█ Having determined that Black and Mexican American employees of Western Gillette at its Houston terminal were discriminated against, both under the Civil Rights Act of 1964 and the Civil Rights Act of 1866, this court must now determine the remedy to be given these aggrieved plaintiffs. The question of remedy is a complex one because of the conflicting interests of plaintiffs and the various defendants as well as the many employees that will be affected by this court's order. This court must first deal with the question of the dual seniority system. This dual seniority system has locked in past discrimination against minority groups at the Houston terminal. But this court feels that it would be too drastic a remedy to completely merge the two seniority systems. Such a remedy would have various major shortcomings. It would prejudice recently hired or transferred road drivers including minority drivers because they could be bumped off their job by city drivers with lower seniority on the city roster. Further, city employees who during the early years of their employment have enjoyed a weekly guarantee and consequent higher pay as compared to similarly situated road drivers would be permitted to move to the road with a resulting freeze of lower seniority men in the least attractive low-paying road jobs. Top seniority city drivers who could not meet traffic skills and the driving skills required of them would be able to bump into the most attractive road positions. This court is persuaded that doing away with the dual seniority system entirely and having only one seniority roster would, therefore, create chaos and be detrimen-

tal to both minority and nonminority employees as well as the Company. In questions of this kind, the court must tread softly and must fashion a remedy which has the least destructive effects on both Company's and employees' desires while at the same time obviating the effects of past discrimination.

This court intends by its order to afford the class members an opportunity to transfer to over-the-road positions heretofore denied them either by outright discrimination or by virtue of their having been "locked in" as a result of their collective bargaining agreement. Such relief must be broad enough to insure that the transferring discriminatee is able to keep his over-the-road position once he obtains it. Consequently, all transferring discriminatees will carry over with them their "rightful place" seniority date. "Rightful place" seniority represents the earliest opportunity following his qualification at which any discriminatee could have been hired as a road driver. Bing v. Roadway Express, Inc., et al., 5th Cir., 485 F.2d 441. The testimony at trial and the evidence established that of the qualified class members ten would have accepted over-the-road employment anywhere in the Southern Conference and thirteen of the qualified class members limited themselves to over-the-road employment at the Houston terminal. Further, there were over-the-road jobs available in the Southern Conference and in Houston to which the discriminatees would have acceded absent discrimination. Predicated on the foregoing, those discriminatees who would have accepted over-the-road employment anywhere in the Southern Conference (herein called "Southern Conference Discriminatees) have been assigned "rightful place" seniority dates predicated upon the job next available anywhere in the Southern Conference after the date upon which such Southern Conference Discriminatee was qualified to drive over-the-road. As to those discriminatees who limited themselves to over-the-road employment in Houston, Texas (hereinafter referred to

as "Houston Discriminatees"), they have been assigned "rightful place" seniority based upon the over-the-road job next available out of the Houston terminal after the date upon which such Houston Discriminatee became qualified to drive over-the-road.

A roster of all discriminatees entitled to relief under this Order is herein set forth reflecting the name of the discriminatee, whether he be a Southern Conference Discriminatee (SC) or a Houston Discriminatee (H), and his "rightful place" seniority date. Such seniority dates shall be as of 11:59 p. m. on the date designated.

| Name | "Rightful Place" Seniority |
|------|-----------|
| Raymond O'Neal (SC) | 5/31/56 |
| George Williams (H) | 1/18/60 |
| Luther Thomas (H) | 2/10/63 |
| Alfonso Adams (SC) | 6/18/64 |
| Thomas Lindley (SC) | 6/20/64 |
| I. V. Phlegm (H) | 8/27/64 |
| Frank Fountain (H) | 5/03/65 |
| Essie McGregor (H) | 5/10/65 |
| Herman Carrier (H) | 8/03/65 |
| John Roberson (SC) | 9/01/65 |
| Roy Rodrigues (SC) | 6/09/66 |
| Henry McTear (SC) | 10/11/66 |
| Leonard Ramirez (SC) | 5/02/68 |
| Oliver Sabala (SC) | 6/18/68 |
| Lewis Norman (H) | 4/27/69 |
| Robert Clark (SC) | 2/07/69 |
| Charles O'Neil (SC) | 2/11/69 |
| Grover Williams (H) | 5/01/70 |
| Edgar Williams (H) | 6/07/70 |
| Deford Bailey (H) | 7/20/71 |
| Charles Lipscomb (H) | 7/21/71 |
| Ormogene Dosty (H) | 9/01/71 |
| Ellsworth Pinkins (H) | ---- |

■ Two members of the class previously defined, Frank Golden and Manuel Ellison are eliminated from further consideration for remedial relief or back pay because (a) both responded to defendant Western Gillette's interrogatories that they would not accept road employment either in Houston or in the Southern Conference, and (b) neither is presently qualified to operate over-the-road equipment.

Jose Fonseca is entitled to no relief in that he has quit his employment and is, therefore, no longer a member of the class as previously defined.

This court finds that discriminatee Frank Fountain was disqualified for employment as an over-the-road driver from July 1, 1972, until June 1, 1973, and, therefore, that any back-pay award to the said Frank Fountain will not include an award for the eleven-month period described herein.

This court finds that discriminatee Leonard Ramirez accepted over-the-road employment outside the Southern Conference in August 1972, and, therefore, any back-pay award as to the said Leonard Ramirez shall terminate as of August 1, 1972.

The following changes are hereby ordered to be placed into effect:

1. Within thirty (30) days of this Order, the Company shall inform in writing all class discriminatees whose names appear in the list set forth above of their rights under this Order including the right to transfer to over-the-road driving jobs with "rightful place" seniority carry-over. A copy of such written notice shall be presented to counsel for the class for approval prior to dispatch. The notice shall contain the salient provisions hereinafter set forth in paragraphs 2 through 9.

2. As over-the-road job opportunities occur anywhere in the Southern Conference, such jobs shall be offered to the discriminatees whose names appear above in the order in which their names appear above. The Company is ordered to offer such persons the opportunity to transfer, with "rightful place" seniority dating to the date set forth opposite such men's names. As to Ellsworth Pinkins, his "rightful place" seniority date shall be the date that the first opening occurs in Houston, Texas.

■ . To the extent that the carry-over of "rightful place" seniority violates the National Master Freight Agreement rule on seniority, that rule is suspended because it violates the Civil Rights Act of 1964. Accordingly, the union defendants are enjoined to not oppose the effectuation of the transfers herein ordered.

The practice of casuals "forcing on" as road drivers was referred to in this

court's earlier opinion, 362 F.Supp. 1142 at 1152. This practice should be discontinued because it is the opinion of this court that such practice can be utilized to effect a policy of discrimination relating to road-driver positions. However, such a practice is apparently a part of the present bargaining agreement and for that reason this court is reluctant to enjoin future use of such practice. The court suggests that in connection with future negotiations relating to new bargaining agreements the parties should meet this problem. In the meantime, whenever, in the Southern Conference, a person "forces on" the road board, a job vacancy shall be deemed to have occurred, and the Company shall immediately offer a position at such terminal to the next discriminatee entitled to a job opportunity. As to such transfers, union defendants are enjoined to not oppose their effectuation.

3. If any member of the Southern Conference Discriminatees rejects an opportunity to transfer to an over-the-road driver position at any terminal in the Southern Conference, he shall be deemed to have waived his right to transfer under this Order. If a Houston Discriminatee rejects a job offer at a terminal other than in Houston, his name shall be moved to the bottom of the roster set forth above and he will be afforded one more demonstrable opportunity to transfer to a road position in Houston, Texas, if and when an over-the-road vacancy occurs there.

4. Any discriminatee who transfers to an over-the-road driving job pursuant to this Order or who may have previously transferred (e. g., Leonard Ramirez) shall carry his "rightful place" seniority for all bidding purposes and his company seniority for fringe-benefit purposes. Each transferring discriminatee shall be slotted into the over-the-road seniority roster at the terminal to which he transfers based upon his "rightful place" seniority so that he may establish his "rightful place" on such roster.

5. Any discriminatee who transfers to an over-the-road position pursuant to this Order shall have a 180-day "retreat" period during which he shall have the right to return to his old job without loss of seniority if he does not wish to continue as an over-the-road driver. Such a return shall be considered a rejection within the meaning of paragraph 3; provided, however, that any discriminatee may waive, in writing, his "retreat" right and by so waiving that right forfeits the privilege of returning to his former job classification with his seniority intact.

6. After each discriminatee has had one demonstrable opportunity to accept or reject over-the-road employment at any terminal in the Southern Conference, and after each Houston Discriminatee, regardless of whether he rejects an opportunity other than at Houston, has had one demonstrable opportunity to accept or reject any over-the-road position at Houston, Texas, as per paragraph 3, above, the operative provisions of this Order shall terminate. However, the Company is admonished that it should seek henceforth to promote, on a nondiscriminatory basis, from within in the future.

7. Defendant International shall designate one International union official who shall be responsible for compliance with this Order. The International shall give counsel for plaintiff his name within thirty days of this Order. Such individual shall inform all affiliated local unions which represent Western Gillette, Inc., employees of the requirements of this Order and advise them of the necessity of compliance therewith.

8. As to all of the above, the Company is ordered to implement the necessary changes, and the union is enjoined from opposing such implementation.

9. This court shall retain jurisdiction for the purpose of resolving any controversy or problem which may arise in the implementation of this Order which cannot be satisfactorily resolved through normal grievance procedures.

This court feels that the above remedy would be the most appropriate means to

destroy the effects of past discrimination on members of the class. The reasons that class members who were discriminated against may transfer to any terminal in the Southern Conference and not just the Houston terminal are that the evidence shows:

(a) That "Modified System Seniority" affords over-the-road drivers the opportunity to "bump" from terminal to terminal in the Southern Conference when they are on layoff;

(b) That at least ten men demonstrated to the satisfaction of the court that they were in the past and continue to be willing to accept over-the-road employment at any terminal in the Southern Conference; and

(c) That the Company freely moves road drivers from location to location within the Southern Conference under "changes of operation." The full dual seniority system remains in effect for all city drivers whose names do not appear in the roster set forth above since this is what the employer and employees desire as evidenced by their actual practice and their collective bargaining agreements.

## DAMAGES AND COSTS

*Damages*

██ The plaintiffs also seek appropriate back pay representing the monies they would have earned had they been over-the-road drivers. This is a Rule 23(b)(2) class action which is used when the representatives of the class are seeking final injunctive relief or corresponding declaratory relief. However, it is also permissible in a Rule 23(b)(2) class action to seek and obtain back pay as part of the injunctive relief needed to obviate past discrimination. See Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969); Robinson v. Lorillord Corp., 444 F.2d 791 (4th Cir. 1971); Wright & Miller, Federal Practice and Procedure § 1775. It is clearly in the discretion of the court, once having found intentional unlawful employment practices, to order,

as part of the affirmative action necessary to obviate such unlawful employment practices, that the party responsible for the unlawful employment practices pay to the class members back pay calculated to restore such class members to their rightful economic place. The discretionary authority vested in this court is found in 42 U.S.C. § 2000e–5(g), and supported by the Fifth Circuit: "The demand for back pay is not in the nature of a claim for damages, but rather is an integral part of the statutory equitable remedy, to be determined through the exercise of the court's discretion. . . ." Johnson v. Georgia Highway Express, Inc., *supra.*

██ This court holds that members of the class previously described are entitled to back pay equaling the difference between the salary they did receive as city drivers and the salary they would have received as over-the-road drivers absent discrimination. The court finds that it is not necessary as a prerequisite of an award of back pay to a class plaintiff that such class plaintiff had to apply for a position and be denied a position for discriminatory reasons at a time a position was available. Accordingly, the court concludes, as a matter of law, that proof of discrimination against an individual member of the class is not a prerequisite to an award of back pay to that individual member of the class. See United States v. Georgia Power Co., 474 F.2d 906 (5th Cir. 1973). No back pay shall be computed for time after July 17, 1973, when this court by its prior Memorandum and Order ordered that the discriminatory practices be terminated.

This court has found that a reasonably prudent over-the-road driver for Western Gillette, Inc., expends approximately 10% of his gross annual pay in connection with his employment as an over-the-road driver; consequently, as to any back pay determined to be due any discriminatee herein, such amount otherwise determined due such discriminatee shall be reduced by an amount equal to 10% of such amount. This

court has heard testimony from all discriminatees with regard to "interim earnings," and finds that the evidence adduced is not sufficiently definite to show that such "interim" or "moonlight" earnings were of the type that such discriminatees could not have earned had they been employed as over-the-road drivers. In connection with such earnings, counsel for the class has agreed to furnish counsel for the Company all discriminatees' earnings data for the years 1968 through 1973, and counsel for the class is ordered to do so as a condition precedent to the payment of any back pay to any discriminatee. The court will retain jurisdiction to resolve disputes concerning the matters of "interim" or "moonlight" earnings insofar as such earnings might operate to reduce the amounts of back pay due each discriminatee. Finally, no discriminatee shall be paid any monies due him under this Order until such discriminatee shall have accepted an over-the-road job and remained in such job beyond the 180-day "retreat" period unless such discriminatee waives such "retreat" period in writing in which case he shall be paid at the time of such waiver; provided, however, if all discriminatees are not afforded one demonstrable opportunity at over-the-road employment within a period of one year of the date of this Order, the court will reconvene counsel for the purposes of ascertaining the reasons therefor and ordering such further affirmative action, if any, which may be necessary to implement this court's Order.

■ In this second half of the bifurcated trial, substantial expert testimony and supporting data was offered by both counsel for plaintiffs and counsel for the Company with regard to the matter of determining the difference in what a discriminatee earned as a city driver and what he would have earned as an over-the-road driver. The matter of computation of back pay for each member of a class of discriminatees, at trial, is a question of first impression. The variety of formulae by which individual back pay due this class of discriminatees

can be computed is bewildering; the record of the second part of this bifurcated trial is replete with such formulae. Having carefully considered all of such formulae as were advanced, this court adopts the formula of Dr. Richard A. Tapia which is contained in court's Exhibit 2. By that formula, a reasonably prudent (*i. e.*, representative) road driver and a reasonably prudent (*i. e.*, representative) city driver, each having characteristics representative of their peers with regard to seniority, earnings and work habits were selected. Thereafter, the average monthly earnings of the representative road and city driver for the period embracing June 3, 1968, through July 17, 1973, were compared, and a ratio representing such comparison was derived. In this case it was demonstrated that a representative over-the-road driver earns, on a monthly basis, 1.56 times that which a representative city driver earns. The court while recognizing that the method of damage calculation determined by it contains a statistical disparity and does not measure what the plaintiffs would have earned had they been given the first available opportunity to transfer to a line position, nevertheless, holds that the 1.56 factor is based upon the average road driver earnings as against the average city driver earnings based upon the seniority date of the city drivers, and that such factor is to be applied to all plaintiffs. Consequently, in order to find the back pay due a particular discriminatee, such discriminatee's earnings for the period June 3, 1968, through July 17, 1973, or from his "rightful place" seniority date through July 17, 1973, whichever is lesser, must first be determined; that figure should then be multiplied by 1.56; the result of such multiplication represents the gross earnings he would have made as a road driver. The resulting figure must, of course, be reduced by (a) the expenses incurred in connection with over-the road employment which are not incurred in connection with city driver employment (in this case, 10%), and (b) any

"interim earnings" of a particular discriminatee which he would not have been able to have earned had he been an over-the-road driver, and (c) the actual amount earned as a city driver.

Based on the conditions of accepting over-the-road employment as set forth above, the defendant Company is ordered to pay to the discriminatees the amounts set forth in the court's Final Judgment.

■ This court holds that the back pay set forth in the Final Judgment will be paid to the qualifying members of the class by the defendant Company. The Company maintains that it is not liable for the dual seniority system. However, the Company in its collective bargaining agreements with the unions agreed to accept the principle of seniority under the different contracts as a basis for assignments of work for its employees. At the very least, the Company knew of the dual seniority system and accepted it. Further and more importantly, the testimony of witnesses and the statistical evidence show that the Company discriminated against members of the class who desired to become road drivers. The testimony and the statistical evidence demonstrates that there was never a Black or Mexican-American hired as an over-the-road driver in Houston, Texas. The Company may not evade its burden of having to pay to rectify this discrimination by saying the seniority system is the unions' responsibility alone.

*Costs*

■ The question of attorneys' fees and other costs involves an allocation of responsibility for this discrimination among the various defendants. The 1964 Civil Rights Act provides that the court, in its discretion, may allow the prevailing party reasonable attorneys' fees as part of the costs. 42 U.S.C.A. §§ 2000a–3(b). The Fifth Circuit has held that in a § 1981 action the court may also award attorneys' fees. Jinks v. Mays, 464 F.2d 1223 (5th Cir. 1972). All defendants argue that they have no responsibility for the discrimination. As noted earlier, this court holds that the primary responsibility for the discrimination against the class is the Company's since the Company is the one that practiced overt discrimination in transferring which resulted in locked-in discrimination of the dual seniority system. Both the International and the Southern Conference, on the one hand, and the Local, on the other hand, argue that because of the collective bargaining structure they have nothing to do with any discrimination. The unions' attempts to wash their hands of the discrimination must fail. As far as the Local is concerned, it acquiesced in the discrimination practiced against its members. Further, the Local gave a written power of attorney to a bargaining committee representing the Southern Conference of Teamsters (the National Teamster Union is divided into various regional conferences, one of which is the Southern Conference) which negotiated the contract. The bargaining agreement authorizing this seniority system was signed by the Local and also negotiated by an agent of the union, and, therefore, the Local is responsible for it. International and Southern Conference argue that any discrimination is a matter between the Company and the Local. These unions argue that neither International nor Southern Conference was a bargaining agent of the Local. To understand this contention reference must be made to the manner in which collective bargaining arguments are reached. The basic nationwide contract between the Teamsters Union and employers throughout the country is the National Master Freight Agreement. This is negotiated by committees representing local unions and various employers. Incorporated into the National Master Freight Agreements are various supplemental agreements entered into between negotiating committees for the Teamsters locals in the conference in question and committees for the employers in the conference. These supplemental agreements affecting the class in this suit are

the Over-the-road Supplemental Agreement and the Local Freight Forwarding Supplemental Agreement for the Southern Conference and they are signed by the local union. Even though in theory perhaps neither the Southern Conference nor International are part of the agreements, in practice the negotiating committee is made up of International and Southern Conference·officials at least in part responsible for its outcome. As this court said earlier, all union organizations violated their duty under § 1981 to protect the class from discrimination. Therefore, this court awards the costs of this action to the plaintiffs; such costs are to be taxed against the defendants and allocated as follows: one-half (½) to be paid by the Company, the other one-half (½) to be paid equally by the three union organizations. Included in such costs, but not limited thereto, are the following:

(a) Expert witness fee for Dr. Richard A. Tapia, who testified on behalf of the plaintiffs and who prepared certain studies at the court's request $ 3,000.00

(b) Attorneys' fees to Mandell & Wright (Sidney Ravkind), attorneys for Leonard A. Ramirez ............... $12,500.00

(c) Attorneys' fees for Rosenthal & Rosenblum (Messrs Henry Rosenblum, Alvin Rosenthal and Ronald Cohen), attorneys for the Class .......... $35,000.00

(d) Such other and further costs which are ordinarily taxable in litigation of this nature.

As to (a), (b), and (c), this court finds that the amounts set forth therein are reasonable under the circumstances in light of the time spent in preparation and litigation of the cause, the complexity of such preparation and litigation, and the novelty of the issues.

▮▮▮ Plaintiffs have also sued defendant unions alleging a breach of duty of fair representation under 29 U.S.C. § 151. The landmark case on the duty of fair representation is Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). This case held that a bargaining representative of employees has a duty "to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them."

Steele v. Louisville & Nashville R. R. Co., *supra* at 202, 203, 65 S.Ct. at 232, 89 L.Ed. at 183. The evidence on this point was rather meager—almost entirely what this court denotes as "remote circumstantial." For that reason, this court reluctantly holds that there has been no breach of fair representation by any of the union defendants. The unions have acquiesced in a seniority system that perpetuates past discrimination but that does not give rise to a breach of their duty of fair representation. To breach this duty there must be evidence that the unions acted unfairly or unimpartially or not in good faith or with hostile discrimination. Richardson v. Texas & New Orleans R. R. Co., 242 F. 2d 230 (5th Cir. 1957).

To sum up, plaintiff Sabala may represent all Mexican-Americans and Blacks currently employed by Western Gillette during the pendency of this. action as city drivers in Houston, Texas. Plaintiff Sabala. and the class he represents and plaintiff Ramirez·have proved discrimination·against the defendant Employer under § 1981 and § 2000e and against the defendant Local, Southern Conference, and International under § 1981. Both Company and unions are to some extent responsible for this discrimination although the Company has the greater burden of responsibility. Plaintiffs have not shown a breach of the duty of fair representation by any of the defendant unions. This court enjoins all defendants from continuing the. discriminatory practices discussed herein and orders the parties to implement the affirmative action relief ordered by this Opinion.

Except as included in this supplemental Opinion, each party's requested proposed findings of fact and conclusions of law have been, and the same are hereby, denied and this supplemental Memorandum and Opinion along with this court's prior Memorandum and Order dated July 17, 1973, as reported in 362 F.Supp. 1142, will constitute the entirety of this court's findings of fact and conclusions of law relating to all aspects of this case.