**LOCKHEED MINORITY SOLIDARITY COALITION et al., Plaintiffs,**

v.

**LOCKHEED MISSILES AND SPACE COMPANY, INC., et al., Defendants.**

No. C–73–2006–CBR.

United States District Court,
N. D. California.

Jan. 8, 1976.

As Amended Feb. 14, 1976.

Sanford Ress, Michael S. Milligan, Palo Alto, Cal., for plaintiffs.

Pillsbury, Madison & Sutro, William L. Diedrich, Jr., Joe C. Creason, Jr., Bruce A. Nelson, San Francisco, Cal., Ralph A. Hurvitz, Associate Counsel, Lockheed Missiles & Space Co., Sunnyvale, Cal., for defendant Lockheed.

Rose, Klein & Marias, Alfred M. Klein, Michael J. Shelley, Los Angeles, Cal., for defendant Unions.

## MEMORANDUM OF OPINION AND ORDER

RENFREW, District Judge.

This Memorandum of Opinion and Order is addressed to the question of the appropriate amount of attorneys' fees to be awarded to Sanford Ress and Michael Milligan ("claimants"), the private attorneys representing a number of classes of plaintiffs in an employment discrimination suit brought under 42 U.S.C. § 2000e *et seq.* ("Title VII") against Lockheed Missiles & Space Company, Inc. ("Lockheed"). Following extensive hearings concerning the fairness of the proposal, a settlement agreement disposing of the pending litigation was approved by the Court on November 20, 1975. The Order awarding attorneys' fees to claimants was signed on December 30, 1975. This Memorandum of Opinion and Order sets out the reasons for that award.

Although originally a part of the negotiated settlement, the question of the attorneys' fees of the two attorneys representing the plaintiffs is now a disputed matter. As part of the tentative settlement package, Lockheed had agreed to pay attorneys' fees in the amount of $45,000 to claimants. When Lockheed learned that claimants would receive a contingent fee amounting to $30,000 from the recovery provided for the named plaintiffs in the settlement agreement, it refused to be bound by its original agreement, arguing that that agreement was vitiated by claimants' failure to disclose the existence of the contingency agreement. Claimants, for their part, assert that they were never asked about any other agreements concerning their fees and that they had agreed to the payment of $45,000 on the assumption that they would also receive the $30,000 from their clients. In claimants' opinion, a total award of $75,000 was insufficient but acceptable in the interest of settlement. When the under-

standing regarding attorneys' fees broke down, the parties entered into a stipulation, which was approved by order of the Court on July 28, 1975, submitting the matter of attorneys' fees for the determination of the Court.

Extensive memoranda have been submitted on the question by both claimants and Lockheed. A hearing on the question was held on October 23, 1975, and, in addition, the Court has been presented subsequently with extensive supporting documentation by both sides.

Before turning to issues particular to the claim for attorneys' fees in the instant case, it is appropriate to set out the Court's more generalized attitude toward the award of attorneys' fees in Title VII cases. The Court approaches this issue with an awareness of the importance that adequate fee awards play in the vindication of the rights guaranteed by Title VII. Litigation in this area often involves extraordinarily complex legal and factual issues that many attorneys would simply be unable to handle successfully. The important individual and societal issues at stake in such litigation may not be adequately protected unless attorneys possessing the requisite skills can be induced to take Title VII cases. Many able attorneys, no doubt, are willing to forego some financial rewards because of the psychic satisfaction of advancing a cause in which they believe. However, the enforcement of the rights guaranteed by Title VII cannot be entrusted to such altruistic motives. While awards of attorneys' fees should not be used as either an additional sanction against defendants or as a windfall for plaintiffs' lawyers, the awards must be sufficient to make such representation financially attractive to highly qualified attorneys. For this reason, in making the many discretionary decisions inherent in the determination of the award in the instant case, the Court has kept this factor in mind.

At a less philosophical level, there are a number of factors to be considered in assessing a claim for attorneys' fees. In the instant case, the Court has been

guided by the approach of the excellent and frequently cited decision of the Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5 Cir. 1974).[1] *See also City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2 Cir. 1974); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3 Cir. 1973); *In re Gypsum Cases,* 386 F.Supp. 959 (N.D.Cal.1974).

■■■■ The first step in evaluating a claim for attorneys' fees is the determination of the number of hours spent on the case by the claimants. This essential determination has been complicated in the instant case by the inability of claimants to provide the Court with easily analyzable evidence of the time that they claim to have expended. This constitutes a serious failing, because, as the Court of Appeals for the Fifth Circuit has stated in *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 720, "it must be kept in mind that the plaintiff has the burden of proving his entitlement to an award for attorney's fees just as he would bear the burden of proving a claim for any other money judgment." Apart from their own assertions concerning the time expended, claimants have submitted a mass of time cards which frequently only cryptically identify the work that they supposedly record. The billing system used by claimants makes it singularly difficult to obtain a sense of the time expended in the instant case, either chronologically or in relation to the other cases pending in claimants' office during the relevant period. After an excessive amount of the time at the hearing was spent by the Court in attempting to decipher the time cards, the Court requested that claimants prepare a weekly summary of their billing to reflect the time expended on the instant case in relation to the other work then being done by claimants. Although the requested summaries were submitted, they were not very carefully prepared either as to form or substance. Handwritten on yellow legal paper, the summaries include at least two cases for which time is recorded under more than one code symbol.[2] Moreover, there was no running total of the time spent by each attorney in the case.

■■■ Subsequent to the hearing and to the preparation by claimants of the weekly summaries, auditors employed by Lockheed visited the offices of claimants and checked the time cards and the summaries against various other sources of information in claimants' files. The re-

1. The twelve factors listed by the *Johnson* court have been considered by the Court in the instant case, although not all of them have been mentioned explicitly. The textual discussion emphasizes the factors which the Court found to be most important in the context of the instant case.

2. Claimants undermine the ability of the Court to give credence to claimants' other representations and claims because of their claims with regard to these summaries. The Court requested the preparation of the weekly summaries because of the inadequacy of the materials submitted by claimants. At the hearing, the Court did indicate its view that the preparation was an expense that should be borne by Lockheed. After submitting the summaries, which are described in the text above, claimants made a request for reimbursement for the expense of their preparation. They represented that the person hired to compile the summaries had spent 37.5 hours in performing the work. While this amount of time seems grossly excessive to the Court, the amount that claimants demand for reimbursement is absurd. Beginning with the proposition that San Francisco firms charge $30 per hour for the work of legal assistants, claimants argue that they should receive "a minimum of $1,125.00" for the preparation of the summaries. This claim demonstrates bad judgment bordering on bad faith. There was no assertion that the person hired for this job either needed to have or had the skills of a legal assistant. The compilation of the information was a purely mechanical task. Furthermore, the comparison to the charges for permanent employees for whom firms must bear a heavy overhead expense is completely inappropriate in the case of work assigned to outside help on a one-time basis. Because the Court stated that Lockheed would bear the expense of the summaries, it feels compelled to reimburse claimants, but the reimbursement shall be at the rate of $5 per hour claimed, an amount which represents the realistic value of the work. The total amount is therefore $187.50 for this work.

sult of this investigation was to establish that claimants' statements are substantially accurate as to the number of hours that claimants purport to have billed in the instant case. (The investigation does not, of course, shed any light on arguments that the time recorded was excessive.) Consequently, the Court will accept that claimants' records indicate that they have expended a total of 1004.5 hours on the instant case as of November 15, 1975. The Court will also award an additional 20 hours to cover any incidental matters that might require the time of claimants in concluding their involvement in the case. With that addition, the total number of hours to be compensated is 1024.5. It is important to note in this context that the Court has been extraordinarily lenient with the claimants. Attorneys who handle plaintiffs' Title VII cases must establish a system of keeping time that lends itself to judicial scrutiny in considering awards of attorneys' fees. If the problems of proof are insurmountable, as the ones in the instant case very nearly were, disputed claims of time will have to be disallowed.

■ Lockheed has argued vigorously that the total number of hours for which claimants seek compensation should be drastically reduced. A number of Lockheed's arguments were eliminated by their auditors' examination of claimants' time records. One argument was, however, substantiated at the hearing. The time spent in preparing certain interrogatories used in the instant case, and also used in several of claimants' other Title VII cases, was fully charged to as many as three cases. Claimants confirmed that this procedure had been followed with regard to interrogatories on which the claimed time was as much as 30 hours. Accumulated expertise may be a factor justifying a higher hourly rate, but it is clearly improper to make multi-ple charges for work that has only been done once. Accordingly, the 30 hours charged to those interrogatories will be reduced by two thirds to 10 hours to reflect the proportionate amount of time properly allocated to the instant case in the preparation of the disputed interrogatories. With the reduction of 20 hours, the total number of hours on which the award will be based is therefore 1004.5.

Incredibly enough, there were no breakdowns submitted to the Court as to the time expended by each of the two claimants. However, they have represented that the total time expended by them has been contributed approximately in the proportion of ⅔ by Mr. Ress and ⅓ by Mr. Milligan. Lockheed has not taken exception with that estimate, and it is reluctantly adopted by the Court for purposes of the following calculations. Thus, the time contributed by Mr. Ress is 669.7 hours and by Milligan, 334.8 hours.

■ After determining the number of hours expended by an attorney claiming attorneys' fees, a court must then determine the value to be attached to that time. These two figures—number of hours and value per hour—form the core of the calculation of a proper attorneys' fee award.[3] As will be discussed more fully below, further adjustments may be appropriate, but such adjustments merely represent a "fine tuning" of the amount derived from these first two determinations. In the instant case, the determination of the value of the services must be done separately for Mr. Ress and for Mr. Milligan.

■ Attaching an appropriate value to the time of an attorney is necessarily a subjective process, requiring the Court to take into account all the intangible factors that go into an attorney's legal reputation. As the Court of Appeals for the Third Circuit stated in *Lindy, supra,*

---

**3.** This is so where the result of the litigation has been to further the public interest, and the number of hours expended is reasonably related to the result achieved. Attorneys must not believe that they will be compensated for vast amounts of time expended in cases which do not significantly advance the public interest.

487 F.2d at 167, "The value of an attorney's time generally is reflected in his normal billing rate." This very probative source of information is not available in the instant case. In an attempt to justify the request for an award of $100 per hour *for all the hours expended by both claimants,* Mr. Ress represented to the Court that his normal hourly billing rate for routine matters was $60 per hour, but that because of his particular expertise in Title VII matters, he charged more than that amount in Title VII cases. The Court asked Mr. Ress to substantiate his claim of an hourly billing rate of $60 by providing documentation in the form of paid bills or the like, and Mr. Ress agreed to do so. The only "documentation" subsequently submitted consisted of a memo by Mr. Ress to his own file concerning a quotation of $60 per hour in a telephone conversation concerning Mr. Ress's possible services in a contemplated divorce matter. In the absence of any more convincing evidence of his hourly billing rate, the Court is left to determine the value of Mr. Ress's services in a virtual vacuum, based only on its observation of him in court and the relatively scant information concerning him which is at the Court's disposal. The only supporting documentation provided by Mr. Milligan is certain claims for reimbursement and payment concerning several criminal appeals in which Mr. Milligan represented indigent appellants.

It should be noted that claimants also submitted a number of affidavits addressing the question of the proper amount of an attorneys' fee award in a Title VII case. Some of these affidavits were not prepared for this case but did address roughly similar situations. Several of the affidavits were prepared particularly for this case and were highly complimentary of Mr. Ress. Because of their extravagant nature—urging awards of from $100 per hour to $250 per hour and including information as to which the affiants did not have personal knowledge—the Court did not find these affidavits to be of any material assistance in its resolution of this matter.

Mr. Ress, the lead counsel for plaintiffs, is a man approximately thirty-three years of age. He has been a member of the California Bar since 1967, although his involvement with Title VII litigation dates from 1971. Through circumstance or design, he now devotes a substantial part of his practice to Title VII cases and has a number of such cases pending in his office at the present time. Because no substantive motions were filed in the instant case, it is impossible for the Court to draw any conclusions about Mr. Ress's mastery of the rapidly developing law of Title VII. The Court does note, however, that it was advised that Mr. Ress has never actually tried a Title VII case. Under all the circumstances of the case and the nature of the legal work done by Mr. Ress, the Court concludes that a fair hourly rate for his time is $50 per hour.

Mr. Milligan, Mr. Ress's assistant in this case, is a man approximately thirty-one years of age. He has been a member of the California Bar since 1972. Mr. Milligan has fewer years of experience as an attorney than Mr. Ress and is, by his own admission, a less accomplished Title VII attorney than Mr. Ress. In a memorable expression of humility and respect, Mr. Milligan explained his inability to submit affidavits attesting to his skill in Title VII matters as resulting from his practice "in the shadow of his mentor". Under all the circumstances of the case and the nature of the legal work done by Mr. Milligan, the Court concludes that a fair hourly rate for his time is $35 an hour.

The process by which the Court arrived at the above hourly figures requires some explanation apart from the factors already mentioned. Claimants and Lockheed reached an agreement that the fees for "protracted litigation" charged by leading San Francisco law firms ranged from $40 per hour for associates to $90 per hour for partners. While this range of charges may provide some guidance, it must be noted that the instant case hardly qualifies as "protracted litigation". Lockheed made known its intention to settle the matter

before filing its answer, and serious settlement negotiations began shortly after the suit was filed. Thus, it was clear from a very early stage that settlement rather than litigation would be the method by which the dispute would be resolved. The legal work in this case was more closely akin to protracted contract negotiation than to protracted litigation.

While the average hourly rate for claimants' time is less than that charged by Lockheed's attorneys, the Court finds that the above rates are nonetheless appropriate. In an important sense, the comparison to the rates charged by leading San Francisco law firms is misleading. The overhead expenses of maintaining a firm in the heart of the City must be greater than those of maintaining a firm in the suburbs.[4] Furthermore, in the instant case, the attorneys for Lockheed took the responsibility for the preparation of all of the many drafts on which the negotiations were based. While claimants did have to expend a considerable amount of their own time in evaluating those drafts, they were freed from the considerable expense of having their staff produce the documents themselves. Finally, any evaluation of this kind is, in the final analysis, a subjective one. The Court has had the opportunity of observing claimants in court on numerous occasions and feels that the above hourly rates are fair in light of all the circumstances.

█ It has been recognized in a number of cases that certain adjustments may be necessary to the basic award derived from the Court's findings of the number of hours expended and the appropriate hourly rate. The first potential adjustment to be discussed is an increase based on the contingent nature of ultimate success in litigation. For example, in addressing the question of attorneys' fees in the context of an antitrust settlement, the *Lindy* court, *supra,* 487 F.2d at 168, stated that the existence of criminal convictions providing a *prima facie* case for subsequent civil litigants under the Clayton Act might so reduce the contingency of success that little, if any, increase would be appropriate. Similarly, in the instant case, Lockheed's early statement of its intention to settle the case substantially reduced the contingency of failure. As stated above, the prospect facing claimants was never the stark alternative of victory or defeat (with the attendant threat of no payment at all). Rather, the only uncertainty involved the terms of the settlement and its timing. Claimants have argued that other contingencies justify an increase under this heading, principally the contingency of establishing the number of hours expended and the contingency of establishing an "acceptable" hourly rate. These contingencies, however, are an unavoidable part of a claim for attorneys' fees and do not merit additional compensation.

█ The Court has concluded that a moderate "contingency" increase is appropriate in this case. The shape of the ultimately accepted settlement agreement was an unknown, although not as great as that in contested litigation. The Court is also sensitive to the fact that claimants' recovery of fees has been postponed for a substantial period during which the inflation rate has been extremely high. Thus, the dollars received now for services rendered at the beginning of this case are less valuable than they would have been if claimants had been able to receive payment on a regular basis. Because billing rates take into account contingencies such as non-payment and deferred payment, inflation does not constitute an automatic basis for a contingency increase. Nevertheless, it is a factor which a court may legitimately consider in arriving at an

---

4. Many of the documents submitted by claimants to the Court were handwritten. Furthermore, in describing the operation of his firm, Mr. Ress stated that he personally performed a number of the administrative tasks associated with the operation which would normally be performed by non-lawyer personnel.

appropriate fee award. For these reasons, the Court finds that the amount of the award should be increased by 20%.

The second potential adjustment to be discussed is based on the quality of the attorney's work. Considerations of this type have, needless to say, a spillover effect in the determination of the appropriate hourly rate. Had the instant case gone to trial, it would have undoubtedly presented legal and factual issues of the utmost difficulty, but, because settlement negotiations commenced almost immediately, many of these issues never materialized. There was not even a motion to dismiss filed in' this case. However, viewed simply as a settlement problem, the instant case still presented substantial difficulties, the solution of which required imagination and administrative ability.

The settlement agreement which was finally approved by the Court is, in the Court's view, a good one which is sensitive to the rights of all those affected by it. At the hearing on the question of attorneys' fees, there was some dispute from seemingly disinterested sources as to the origin of certain innovative solutions for which claimants claim credit. It is unnecessary to resolve those disputes, because an adjustment under this heading is only appropriate in the event of exceptionally high or low levels of performance. The claimants did an adequate job of representing the interests of the classes of plaintiffs. Their performance does not merit a reduction in the amount of the award, but neither does it merit an increase.

In summary, the Court finds that claimants are entitled to attorneys' fees for a total of 1004.5 hours of work in the instant case. Two thirds of this time, 669.7 hours, representing the contribution of Mr. Ress, is to be valued at $50

per hour, thus constituting $33,485.00. One third of this time, 334.8 hours, representing the contribution of Mr. Milligan, is to be valued at $35 per hour, thus constituting $11,718.00. The aggregate award of $45,203.00 is to be increased by a contingency factor of 20%, or $9,040.60, bringing the amount of the award to $54,244.60. Finally, expenses for the preparation of the weekly summaries in the amount of $187.50 is to be added. The total amount to which claimants are entitled is $54,432.10.

Claimants are not entitled to receive their contingent recovery from their clients and the full amount of the award determined by the Court. Lockheed must pay claimants the net amount of $24,432.10 as attorneys' fees in this case, an amount which when combined with claimants' contingent fees from their clients totals to the amount established by the Court. However, Lockheed had originally agreed to pay attorneys' fees in the amount of $45,000, an amount which was calculated into the total amount that Lockheed agreed to pay in settlement of the case. In the Court's judgment, it would be inappropriate for Lockheed to escape from part of its agreement by virtue of the fact that claimants have recovered a part of their fees from the award to the named plaintiffs. Accordingly, the Court shall order that Lockheed pay the amount of $20,-567.90, that being the difference between the amount it had agreed to pay in attorneys' fees and the net amount it must pay under this order, into the fund for the first annual training expenditure agreed to in the settlement agreement.

It is hereby ordered that counsel for plaintiffs shall prepare an appropriate form of judgment in accordance with this Memorandum of Opinion and the Court's Order dated December 30, 1975.