Judy CHAPMAN, T. Dolores Butler, Leslie Ann Jassman, Joan Ann Cochran, Edna K. Riléy, Danya L. Rookard, Constance J. Stader, Nancy Gilmore Swinford and Rueben L. Grundy, Plaintiffs,

v.

The PACIFIC TELEPHONE AND TELEGRAPH CO., Defendant.

No. C–74–2282–WWS.

United States District Court, N. D. California.

Sept. 1, 1978.

Deborah Hinkel Halvonik, Ruth Eisenberg, Christopher Wilson, H. Tim Hoffman, Oakland, Cal., for plaintiffs.

Pillsbury, Madison & Sutro, William L. Diedrich, Jr., Clement L. Glynn, Stephen, Stublarec, Lisa Finkelstein, San Francisco, for defendant.

### MEMORANDUM RESPECTING DAMAGES, ATTORNEY'S FEES AND COSTS

WILLIAM W SCHWARZER, District Judge.

This matter is before the Court on plaintiffs' application for an award of money damages, attorney's fees and costs. The

action was brought by eight women and one black male against The Pacific Telephone and Telegraph Company ("Pacific") charging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the Equal Pay Act of 1963, 29 U.S.C. § 206(d) and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The issues of liability and relief were bifurcated for trial, and the liability issues have been fully tried to the Court. In its opinion filed May 16, 1978, the Court found that Pacific had discriminated against plaintiffs Judy Chapman and Joan Cochran on the basis of sex in violation of Title VII and that those plaintiffs were entitled to relief. All other claims against Pacific were dismissed. The parties have submitted memoranda, affidavits and exhibits on the issues of damages, attorney's fees and cost, and those issues are now before the Court for decision.

## I. *DAMAGES—BACK PAY*

Section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g) provides in part:

(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. . . .

The Court has previously found that plaintiffs Chapman and Cochran had been denied promotions to management positions for which they were qualified in violation of Title VII. Chapman was denied a promotion on February 1, 1974. Cochran was denied a promotion on July 1, 1974. Subse-

quently, on July 1, 1978, both Chapman and Cochran were promoted to the management positions they had sought.

There is no request and no apparent need for injunctive relief. The sole issue is the period for which back pay should be awarded to the two successful plaintiffs. The purpose of Title VII is to make persons whole for injuries suffered as a result of unlawful employment discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Plaintiffs argue that they are entitled to a back pay award commencing two years prior to the filing of their respective EEOC charges. Plaintiffs did not prove, however, that they were qualified for but denied promotions for that period. The back pay period commences at the time the discriminatory failure to promote occurred, i. e., when plaintiffs were qualified and were denied promotion. The denial occurred on February 1, 1974, in the case of Chapman and on July 1, 1974, in the case of Cochran, when available promotions were awarded to men without explanation.

Regarding the termination of the back pay period, Pacific argues that the relevant event was the date on which plaintiffs were considered for promotion. The Court cannot agree. Once it has been determined that Pacific discriminated against plaintiffs when without explanation it promoted men to positions for which plaintiffs were qualified, plaintiffs can be made whole only by an award of back pay to the time they received their respective promotions, i. e. July, 1978. Thus the applicable back pay periods are: Chapman, February 1, 1974—July 1, 1978; Cochran, July 1, 1974—July 1, 1978.

Section 706(g), 42 U.S.C. § 2000e–5(g), provides that interim earnings operate to reduce back pay otherwise available. The amounts plaintiffs earned as TSSs must therefore be deducted from the amounts plaintiffs would have received had they been promoted to second level management. Based on the affidavit submitted by Pacific, which has not been contradicted, the amounts plaintiffs are entitled to recover as

their net loss caused by the denial of the promotion are: Chapman, $9,277.85; Cochran, $10,915.00.

■ In addition, since back pay awards should reflect total earnings, plaintiffs are entitled to recover the incremental amount of bonus awards they would have earned. Based on Pacific's affidavit, these amounts are: Chapman, $1,372.10; Cochran, $52.70.

■ Plaintiffs further claim that they are entitled to recover additional funds they would have received through increased participation in company-matched savings plans. The evidence regarding the savings plans indicates that such an award would be entirely speculative. Three separate savings plans with different earnings and market values were available and it is impossible to determine which plan either plaintiff would have selected and what investment decisions she would have made. This element of the back pay request must be denied.

■ Plaintiffs are entitled to recover interest on back pay. Because of the complexity involved, however, in precisely computing interest on amounts accruing bi-monthly over a period of time, the Court will allow seven percent interest per annum on the average amount outstanding during the damage periods computed as follows:

Chapman— $5,324.98 x 30.92% = $1646.40
Cochran — $5,483.85 x 27.99% = $1535.48

The request for an inflation adjustment is denied inasmuch as cost of living adjustments reflected in the foregoing amounts made adequate allowance for inflation.

Accordingly judgment will be entered for plaintiff Chapman in the amount of $12,296.43, and for plaintiff Cochran in the amount of $12,503.18.

## II. ATTORNEY'S FEES AND COSTS

Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k) provides:

(k) In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

Both plaintiffs and Pacific seek an award of attorney's fees and costs inasmuch as only two of the nine plaintiffs prevailed.

### A. Plaintiffs' Claim for Attorney's Fees

Although the award of attorney's fees against a party is within the discretion of the trial court, it is now clear that a prevailing Title VII plaintiff should be awarded attorney's fees unless special circumstances would render such an award unjust. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Where a plaintiff prevails only partially attorneys' fees may be awarded in proportion to the degree to which plaintiff prevailed. *Schaeffer v. San Diego Yellow Cabs, Inc.,* 462 F.2d 1002 (9th Cir. 1972).

■ In the instant case only two of the nine plaintiffs "prevailed" and they prevailed only on their Title VII claim, not on their Equal Pay Act claim. In the absence of records or data which would enable the Court to allocate lawyer's time to particular claims or plaintiffs, a simple arithmetic proration of the time expended appears reasonable, and plaintiffs' counsel appear to be in agreement with this approach. Accordingly, plaintiffs' counsel will be awarded one-half (based on an equal division between Title VII and Equal Pay Act claims) of two-ninths (based on two out of nine plaintiffs) of the amount of fees found otherwise to be appropriate.

The general considerations governing awards of attorney's fees in Title VII cases are discussed in Judge Renfrew's decision in *Lockheed Min. Sol. Coalition v. Lockheed M. & S. Co.,* 406 F.Supp. 828 (N.D.Cal.1976), and need not be repeated here. The Court is aware of the public interest considerations which warrant a liberal approach to the award of attorney's fees in cases of this type and has had them in mind in reaching its decision. In evaluating the facts bear-

ing on the award in this case, the Court has also had in mind the relevant factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

### 1. *The Hours Expended*

Counsel submitted to the Court copies of their contemporary time records together with summaries. Although these records are not models of clarity and careful record-keeping, they are adequate in light of the amounts involved. The Court has some doubt concerning some of the time charged by Ms. Halvonik, including some fifty hours of work prior to her having been substituted into the case in September 1976, and some forty hours attributable to unsuccessful efforts to obtain a writ of prohibition in the Court of Appeals to set aside an order of this Court which she had violated. Again, however, the amounts involved are insufficient to warrant a more searching inquiry into these matters.

Counsel's records reflect the following hours:

|  | In Court | Out-of-Court |
|---|---|---|
| Ms. Halvonik | 81 | 596 |
| Mr. Wilson | 32 | 186 |
| Ms. Eisenberg | 40 | 154 |
| Ms. Dunlap | 1 | 5 |
|  | 154 | 941 |

The total of 941 hours spent over a period of approximately one and a half years in preparation for the trial of a case involving numerous claims and parties and a time period of well over ten years does not appear out of line. The trial itself lasted eight days and the charge of 154 hours is not unreasonable. All of these hours are of course subject to proration as previously discussed.

### 2. *The Appropriate Hourly Rates*

The appropriate rate of compensation is a function of the prevailing rates in the community and for the particular attorneys involved, the difficulty and novelty of the questions involved, the quality of the services rendered and the result obtained. Nei-

ther side has favored the Court with any factual presentation on these matters.

The Court is generally informed that hourly rates for attorneys engaged in Title VII litigation in the San Francisco Bay area range from approximately $35 to over $100, depending on experience, reputation and the nature of the representation. Plaintiffs' counsel have provided the Court with no information respecting their qualifications and standing or their normal hourly charges.

Plaintiffs' lead counsel, Ms. Halvonik, has been a member of the bar for six years. Ms. Eisenberg and Mr. Wilson have been admitted for five and seven years, respectively. The Court understands that all three have previously been active in Title VII litigation.

Since 1976 the principal responsibility for this litigation has been carried by Ms. Halvonik. Her compensation should reflect her responsibility as lead counsel. In arriving at an appropriate hourly rate, the Court must also take into account the quality of the attorney's performance. In this case, counsel's performance was below the level of what the Court believes it can reasonably expect, even after discounting some of the difficulties encountered in the litigation which arose because of the contentiousness of counsel and personality conflicts among them.

The issues litigated were not particularly difficult or novel. While counsel obtained a favorable result for two of the plaintiffs, they spent considerable time on unmeritorious claims.

The Court believes that the rate of compensation for time spent in trying the case should be somewhat higher than that for time spent outside the courtroom in view of the difference in the degree of effort, concentration and competence normally required.

Taking into account the foregoing considerations, the Court awards attorney's fees to plaintiffs as follows:

| | | | |
|---|---|---|---|
| Ms. Halvonik | 81 x $50 | = | $ 4,050 |
| | 596 x $40 | = | $23,840 |
| | | | $27,890 |
| Prorated as above (1/9) | | | $3,099 |
| Mr. Wilson | 32 x $50 | = | $ 1,600 |
| | 186 x $40 | = | $ 7,440 |
| | | | $ 9,040 |
| Prorated as above (1/9) | | | $1,004 |
| Ms. Eisenberg | 40 x $50 | = | $ 2,000 |
| | 154 x $40 | = | $ 6,160 |
| | | | $ 8,160 |
| Prorated as above (1/9) | | | $ 907 |
| Ms. Dunlap | 1 x $50 | = | $ 50 |
| | 5 x $40 | = | $ 200 |
| | | | $ 250 |
| Prorated as above (1/9) | | | $ 28 |

### 3. *Paralegal and Law Clerk's Services*

Plaintiffs also seek an award for the services of a paralegal-law clerk. Plaintiffs' counsel records reflect that Marilyn MacRae, a law clerk, spent 590 hours working on this action between September 6, 1977, and February 17, 1978, and that she has to date been paid $975 by plaintiffs' counsel, presumably on account.

It is arguable that the cost of providing paralegal-law clerk services is an overhead cost just as any other employee cost, defrayed by attorneys out of the proceeds from their fees, and hence not separately reimbursable. Unlike the work of secretaries and other supporting personnel, however, the work of paralegals and law clerks is ordinarily charged directly to particular litigation and is therefore a clearly identifiable cost. Were it to be treated as an overhead expense, payable out of the general receipts of the attorney, the across-the-board cost of services to the attorney's clients generally would be burdened by paralegal costs incurred in connection with particular matters of no interest or benefit to other clients. The Court therefore rejects the notion that the cost of providing these services should be treated as a non-reimbursable overhead expense.

Two alternative methods of treating charges for these services are open; they may be treated as costs or as a part of attorney's fees. Inasmuch as charges of this nature are not recoverable in the ordinary case as costs under Rule 54(d), F.R. Civ.P., the question is whether statutory authority to recover attorney's fees also authorizes an award of costs on account of paralegal-law clerk services. Since these kinds of costs are not within the scope of traditionally taxable costs, and since the statutory authorization under Title VII for attorney's fees does not by its terms enlarge the definition of taxable costs, there is a basis for denying an award of costs on account of such services.

Nonetheless, a number of courts have allowed charges for paralegal-law clerk services to be taxed as costs in antitrust cases under the provisions of the Clayton Act, which are similar to those found in Title VII. See *Computer Statistics, Inc. v. Blair*, 418 F.Supp. 1339, 1352 (S.D.Tex.1976); *Michelman v. Clark-Schwebel Fiber Glass Corp.*, 1975 CCH T.C.Rep. ¶ 60,551 at 67,413 (S.D.N.Y.1975). If these charges were to be treated as taxable costs, reimbursement presumably would have to be limited to the actual out-of-pocket expenditures incurred to provide the services. See *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir. 1974).

The Ninth Circuit has rejected an expansive view of taxable costs under attorney's fees statutes, see *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 223–24 (9th Cir. 1964), but it appears to have accepted the propriety of awarding charges for paralegal-law clerk services as a part of attorney's fees. In *Pac. Coast Agr. Export Ass'n. v. Sunkist Growers, Inc.*, 1973 CCH T.C.Rep. ¶ 74,523 at 94,357 (N.D.Cal.1973), *aff'd* 526 F.2d 1196, 1210 (9th Cir. 1975), *cert. denied*, 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976), the district court included in an award of attorney's fees under the Clayton Act charges for paralegal services and the Court of Appeals upheld the award. The use of paralegals was found to promote economy and efficiency in connection with litigation involving voluminous documents and extensive pretrial discovery, requiring indexing and digesting of large amounts of information.

The same considerations apply to Title VII litigation. Paralegal personnel are able to provide services which, were they provided by attorneys, would be costly. The availability of paralegals may also promote more thorough trial preparation by making available more economical staff time. To discourage the use of paralegals by denying or unduly restricting fee awards would therefore be poor policy.

While it could be said that charges for paralegals and law clerks, who are not attorneys, cannot qualify as attorney's fees, the objection is a technical one. The work performed by them is work of a kind necessary to the prosecution of the litigation which will, or ought to be, performed, if not by them, by attorneys.

■ For these reasons, awarding attorney's fees on account of paralegal-law clerk services appears to the Court to be entirely appropriate, as well as consistent with the action taken by other courts. See *Davis v. County of Los Angeles*, 8 FEP 244 (C.D.Cal. 1974) (paralegal-law clerk charges recoverable as part of the attorney's fee award under Title VII of the Civil Rights Act of 1964); *Payne v. Travenol Laboratories, Inc.*, 74 F.R.D. 19 (N.D.Miss.1976), *aff'd in part, rev. & vac. in part, all on other grounds*, 565 F.2d 895 (5th Cir. 1978) (paralegal and law student fees recoverable as part of the attorney's fee award under Title VII). *See also In Re Gypsum Cases*, 386 F.Supp. 959, 967–82 (N.D.Cal.1974) (paralegal and law clerk fees recoverable as a part of the attorney's fee awards to various law offices, under the Clayton Act); *Liebman v. J. W. Petersen Coal & Oil Co.*, 63 F.R.D. 684, 693–94 (N.D.Ill., E.D.1974) (compensation for services of paralegals and accountant-investigators recoverable as part of the attorney's fee award from a class antitrust action settlement fund).

Attorney's fees awarded on account of paralegal-law clerk services should, however, be limited to the actual or reasonable cost of those services, whichever is lower. Inasmuch as these services are not rendered by members of the bar, it would be improper to treat them as being the equivalent of professional services. Any element of profit must therefore be excluded from the award. An allowance for overhead may be included only upon a showing establishing the overhead cost fairly allocable to these services. See *Pac. Coast Agr. Export Ass'n v. Sunkist Growers, Inc., supra*, 1973 CCH T.C.Rep. at 94,345.

No evidence has been offered here of the actual rate of compensation paid to Ms. MacRae, or of what would be a reasonable rate. The Court is aware that paralegal charges in the San Francisco area may run to $25 per hour or more. Those rates, however, cover a fixed salary as well as other overhead and presumably some profit. Those items are not applicable here; from all that appears in the record, Ms. MacRae worked on an hourly, as needed basis. No overhead has been shown to be attributable to her work, and no profit may be recovered.

Taking into consideration the factors discussed above, the Court finds a reasonable rate of compensation for Ms. MacRae to be $8 per hour. Under the proration previously established, plaintiffs are entitled to an award of one-ninth of $4,720 (590 hours × $8), or $525.

## B. *Plaintiffs' Claim for Costs*

As the prevailing parties, plaintiffs are entitled to recover their taxable costs under Rule 54(d), F.R.Civ.P. In order to facilitate the taxation of costs by the clerk upon entry of judgment, it is appropriate to dispose here of one category of costs reflected in the itemization of costs submitted by plaintiffs. That category consists of witness fees of plaintiffs' two expert witnesses, Dr. George Whaley and Julia Norton, aggregating in excess of $3,500.

Generally, witnesses, including expert witnesses, are entitled only to statutory witness fees. Rule 54(d), F.R.Civ.P.; 28 U.S.C. §§ 1821 and 1920; *Baum v. United States*, 432 F.2d 85 (5th Cir. 1970). As previously noted, there is no special provision in Title VII for costs above those nor-

mally taxable under Rule 54(d). Whether the prevailing party in an action brought under Title VII may recover additional amounts for expert witness fees is an issue which does not appear to have been decided by the Ninth Circuit. However, in deciding a similar issue, the Ninth Circuit disallowed accounting fees as costs in an antitrust action. *See Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 223–224 (9th Cir. 1964).

■ The Court is aware that at least two district court decisions involving civil rights litigation allowed expert witness fees in excess of the statutory amount. *EEOC v. Datapoint*, 412 F.Supp. 406 (W.D.Tex.1976); *Sabala v. Western Gillette, Inc.*, 371 F.Supp. 385 (S.D.Tex.1974), *aff'd* in part, *rev'd* in part and *rem.* for additional findings on the award of attorney's fees, 516 F.2d 1251 (5th Cir. 1975), *vac.* and *rem.* on other grounds, 431 U.S. 951, 97 S.Ct. 2670, 53 L.Ed.2d 268 (1977). See also *Payne v. Travenol, Inc.*, 74 F.R.D. 19, 23 (N.D.Miss.), *aff'd* in part, *rev'd* and *vac.* in part, all on other grounds, 565 F.2d 895 (5th Cir. 1978). In those cases, however, special circumstances existed which are not present here. In the instant case, the Court in rendering its decision did not rely on the testimony of plaintiffs' experts nor did it find their testimony helpful to an extent which would justify the breaking of new ground on this issue, if it be new ground. The Court, therefore, does not reach the question whether, under different circumstances, expert witness fees in an amount greater than the statutory fee may be awarded a prevailing party under Title VII. It follows that plaintiffs will be limited to recovering statutory witness fees.

No supporting data having been submitted in connection with other items on plaintiffs' cost bill, the Court will leave them to be resolved in accordance with the rule governing taxation of costs. The Court notes, however, that an item of $500 for "attorney's fees," not otherwise explained, must clearly be excluded from taxable costs.

C. *Pacific's Claim for Attorney's Fees*

■ Pacific contends that inasmuch as seven of the plaintiffs failed to prevail at all and the two prevailing plaintiffs lost on their Equal Pay Act claims, it is pro tanto the prevailing party and entitled to attorney's fees.

The argument is without merit. That plaintiffs have prevailed only in part does not necessarily make the defendant the prevailing party in the action. But, even if the claims of those plaintiffs who have been denied recovery could be separated for this purpose, Pacific had not made the requisite showing entitling it to an award of fees. In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court held that attorney's fees may be awarded to a Title VII defendant only "upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421, 98 S.Ct. at 700.

No such finding could be made in this case. To begin with, Pacific has been found to have violated Title VII, even though only two of the plaintiffs were able to prove a case entitling them to recover. Moreover, the statistics which show that no female was promoted to premise sales manager until 1973 and no black until 1974 would preclude such a finding.

Accordingly, defendant's claim must be denied.

IT IS SO ORDERED.