**E Z PAINTR CORPORATION,**
a Delaware Corporation,
Plaintiff,
and
Herbert L. Stern, Jr., Intervening
Plaintiff,
v.
**NEWELL COMPANIES, INC., a**
Delaware Corporation, et al.,
Defendants.

No. 72–C–674.

United States District Court,
E. D. Wisconsin.

Dec. 12, 1974.

Foley & Lardner by David Beckwith, Robert A. Christensen, and Mark S. Lieberman, Milwaukee, Wis., Gottlieb & Schwartz, Chicago, Ill., for Stern. Quarles & Brady by Thomas O. Kloehn and W. Stuart Parsons, Milwaukee, Wis., for E Z Paintr.

Gibbs, Roper & Fifield by Clay R. Williams, Milwaukee, Wis., Schiff, Hardin & Waite, Chicago, Ill., for Newell Companies, Inc.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

The attorneys for the intervening plaintiff, Herbert L. Stern, have petitioned for "an order awarding them compensation of $75,000.00, plus reimbursement of disbursements of $3,839.-01, and directing E Z Paintr Corporation and/or Newell Companies, Inc. to make or provide for the payment there-

of." The parties have submitted briefs and affidavits with respect to the issues raised by the petition. In addition, testimony and oral arguments were presented at hearings conducted on October 31, 1974, and on November 29, 1974. I conclude that the petition should be denied.

This case arose when, on December 5, 1972, Newell gave notice, pursuant to the Wisconsin Corporate Take-Over Law, Wis.Stat., Ch. 553 (1971), that it intended to make a tender for a majority of the approximately one million shares E Z Paintr had outstanding as of that date. On December 11, 1972, E Z Paintr sued to enjoin Newell from taking control of E Z Paintr and to require Newell and Arnold W. Schmidt to divest themselves of any shares of E Z Paintr stock acquired in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, as well as §§ 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m(d), 78n (d) and 78n(e).

On February 8, 1973, Newell announced that its tender offer was effective. E Z Paintr's motion for a preliminary injunction to enjoin Newell from taking control of E Z Paintr pending final determination was denied on March 28, 1973. By that time Newell had purchased sufficient stock pursuant to its tender offer to control a majority of E Z Paintr's outstanding shares. Newell then took control of E Z Paintr pursuant to a putative shareholders' consent procedure, discharged E Z Paintr's counsel—the petitioners herein—and took no appeal from the order which denied E Z Paintr's motion for preliminary injunction. Among those who were displaced was Herbert L. Stern, who had been the chairman of the board and chief executive officer of E Z Paintr.

On April 2, 1973, Mr. Stern was permitted to intervene as the representative of the minority shareholders of E Z Paintr. According to the petitioners, such intervention was "for the primary purpose of appealing the denial of the

preliminary injunction" and "in order to preserve and prosecute [E Z Paintr's corporate] . . . causes of action derivatively." In June, 1973—subsequent to the filing by Mr. Stern of his appellate brief, but prior to the submission by Newell of a responsive brief —discussions began with respect to the execution of a letter of intent to settle this litigation by way of merger. At this point, according to one of Newell's attorneys, E Z Paintr engaged another law firm "to represent it and its minority stockholders in connection with the proposed merger with a subsidiary of Newell." Supplemental affidavit of Stuart L. Goodman, ¶ 4. The litigation was held in abeyance pending the outcome of such settlement negotiations.

On September 19, 1974, this court approved a settlement agreement which, among other things, provided for the merger on October 31, 1974, of E Z Paintr with a Newell subsidiary; provision was also made for an exchange ratio of .78 shares of Newell common stock for each share of E Z Paintr common stock.

■ Ordinarily, attorneys' fees are not allowed. Forest Laboratories, Inc., v. Pillsbury Company, 452 F.2d 621, 628 (7th Cir. 1971). However, United States Supreme Court decisions have recognized two exceptions. A federal court may award counsel fees to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 J. Moore, Federal Practice ¶ 54.77[2], p. 1709 (2d ed. 1972); see, e. g., Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Bradley v. School Board of Richmond, Virginia, 53 F.R.D. 28 (E.D. Va.1971). In this class of cases, the underlying rationale for "fee shifting" is punitive. This basis for the allowance of fees is surely not applicable in the matter at bar.

The other established exception is the one which has been advanced by the petitioners; it involves cases in which the plaintiff's successful litiga-tion confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the cost proportionately among them." Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393–394, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1969). In this regard, it should be noted that the issue before me is not whether Mr. Stern or his attorneys are entitled to a pro rata recovery of fees and expenses from the minority shareholders who were members of the class on whose behalf this litigation was prosecuted and who are claimed to have benefited therefrom. Rather, the petitioners seek an award from the corporate parties and in an amount which is substantially greater than what appear to be Mr. Stern's costs of litigation. (i. e., the product of petitioners' hours times the rate, plus disbursements).

The petitioners rely on Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1969). In that case, the United States Supreme Court determined that "special circumstances" must exist in order to "justify an award [out of the corporate treasury] of attorneys' fees, including reasonable expenses of litigation other than statutory costs." 396 U.S. at 391, 90 S.Ct. at 625. In the Mills case, shareholders, suing derivatively, "established a violation of [§ 14(a) of] the securities laws [i. e., the dissemination of misleading proxy solicitations] by their corporation and its officials." 396 U.S. at 389, 90 S.Ct. at 624. Such violation was characterized by the Supreme Court as a "deceit practiced on the stockholders as a group." 396 U.S. at 392, 90 S.Ct. at 625. Moreover, the Supreme Court noted that

"private stockholders' actions of this sort 'involve corporate therapeutics.' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute."

396 U.S. at 396, 90 S.Ct. at 628.

Reimbursement of attorneys' fees *out of the corporate treasury* is limited, under *Mills*, to situations involving a successful shareholders' derivative action which confers a substantial benefit upon an ascertainable class consisting of all of its shareholders.

A negotiated settlement may constitute "successful litigation" for purposes of "fee shifting." See Green v. Transitron Electronic Corp., 326 F.2d 492 (1st Cir. 1964). Nevertheless, for purposes of this petition, the success of the litigation should be determined on the basis of how the result achieved by the settlement measures up to the relief sought. In *Mills*, the § 14(a) violation alleged in the complaint was proved and remedied.

It appears from the face of the intervening complaint that Mr. Stern set out in April, 1973, to vindicate certain corporate rights and thus thwart an allegedly illegal merger. Within two months, however, he appears to have abandoned such objectives in favor of settlement negotiations aimed specifically at merger. Whether the settlement agreement approved on October 19, 1974, benefited the minority shareholders is not determinative since it is the *corporate* parties which are the object of the petition for reimbursement.

Assuming arguendo that the result obtained by the settlement is consistent with the relief sought in the complaint (i. e., the vindication of certain corporate rights and the prevention of a merger) so that the shareholder derivative aspect of this litigation can be characterized as "successful," I nevertheless conclude that the requested "fee shifting" would be inappropriate for several reasons. Whether a substantial benefit accrued to E Z Paintr's minority shareholders as a result of the settlement agreement is disputed and unclear. For example, the respondents, E Z Paintr and Newell, suggest that the .78:1 exchange ratio provided for by the settlement agreement actually yield-ed less than the suggested exchange ratio offer which was rejected by Mr. Stern in June, 1973.

Moreover, even if the minority shareholders benefited, E Z Paintr itself derived no clear benefit from the litigation. As noted, both the anti-trust and securities causes of action were abandoned by Mr. Stern in favor of a merger involving what the petitioners claim was a lucrative stock exchange ratio offer from Newell. Consequently, it appears that any attempt at "fee shifting" should be aimed at the minority shareholders, as the *primary* beneficiaries of the litigation, rather than the corporate treasury of E Z Paintr (or its successor, Newell). The fact that the "Stern group" (consisting of Mr. Stern, members of his family and three partners in his law firm) controls approximately 31 percent of the common stock in E Z Paintr not held by Newell suggests one reason why the minority stockholders are not the object of this petition. In conclusion, the record supports the finding that Mr. Stern's action was instituted *primarily* for the purpose of sufficiently hindering the proposed merger so that he and the other minority shareholders could do what they did—negotiate what they claim is a more favorable exchange ratio.

In the event that this court's legal interpretation of the petitioners' right to an allowance of attorneys' fees is held erroneous upon appeal, I will herein set the amount of said fees. Were the petitioners entitled to an award of attorneys' fees payable by the corporate parties, I would limit such an award to the amount of Mr. Stern's costs of litigation. The record indicates that such costs (i. e. the product of the petitioners' hours times the rate, plus disbursements) totaled between $39,000 and $42,000. In my judgment, the record made with respect to the issue of amount, as opposed to the issue of entitlement, satisfies the requirements set forth in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sani-

tary Co., 487 F.2d 161 (3d Cir. 1973), and would justify an order awarding $39,000.

Therefore, IT IS ORDERED that the petition of Mr. Stern's attorneys for "an order awarding them compensation of $75,000.00, plus reimbursement of disbursements of $3,839.01, and directing E Z Paintr Corporation and/or Newell Companies, Inc. to make or provide for the payment thereof" be and hereby is denied.