Douglas K. KNUTSON, Arlen N. Benham, Geoffrey Beaty, Laura Duarte, Evan Francis Williams, Joseph W. Berthiaume, Kenneth W. Jackson, Jean E. Nyland, Daniel A. Dutra, Willard B. Kittredge, Robert A. Dutra, Gayle C. Ely, Plaintiffs,

v.

The DAILY REVIEW, INC., a corporation, Bay Area Publishing Co., a corporation, Floyd L. Sparks, an Individual, William Chilcote, an Individual, Dallas Cleland, an Individual, John Clark, an Individual, Carl Felder, Individually and doing business as Felder Enterprises, Defendants.

No. C–73–1354–CBR.

United States District Court, N. D. California.

Oct. 18, 1979.

Timothy H. Fine, Patrick J. Carter, G. Joseph Bertain, Jr., Edward M. Stadum, San Francisco, Cal., for plaintiffs.

Broad, Khourie & Schulz, Michael N. Khourie, Thomas Paine, San Francisco, Cal., for defendants.

## ORDER AWARDING ATTORNEYS' FEES

RENFREW, District Judge.

In this action, plaintiffs move for an award of attorneys' fees in the amount of approximately $200,000 following a series of proceedings before this Court and the Court of Appeals for the Ninth Circuit. The underlying action was initiated in August, 1973. Plaintiffs, independent newspaper dealers, brought suit against defendant publishers and certain officers of the newspapers they distributed alleging various vio-

lations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. At the conclusion of the liability portion of a bifurcated trial on September 23, 1974, this Court rejected three of the plaintiffs' claims [1] but found that defendants had imposed an illegal vertical price restraint in violation of Section 1 of the Sherman Act. *Knutson v. Daily Review, Inc.,* 383 F.Supp. 1346, 1357 (N.D. Cal.1974). However, following the damages trial, the Court concluded that plaintiffs failed to prove either the fact or measure of their injury inasmuch as the Court was not persuaded that plaintiffs would have raised their prices and thus obtained greater profits in the absence of the restraint and thus declined to award any damages despite the finding on § 1 liability. 383 F.Supp. at 1384. The Court did award, however, $7,500 in attorneys' fees to plaintiffs based upon the court's inherent equitable powers in compensation for plaintiffs' proof of the illegal price restraint and for obtaining equitable relief of preserving employment offers extended to plaintiffs by defendants.

On appeal, the Court of Appeals for the Ninth Circuit affirmed in part and reversed this Court's conclusion on the issue of damages in connection with the price-fixing violation. The Court of Appeals held that plaintiffs need only prove some damages to establish the fact of damage, and that once shown, the amount of damage could be established according to a relaxed standard of proof. *Knutson v. Daily Review, Inc.,* 548 F.2d 795, 813 (9 Cir.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977). The court concluded that the Daily Review plaintiffs had met their burden of establishing the fact of damages and that the evidentiary infirmities cited by this Court related only to the amount of damages. But the court also held that the Argus plaintiffs had completely failed to prove even the fact of damages. 548 F.2d at 812–813. In remanding the case of the Daily Review plaintiffs back to the district

1. Those contentions were (1) defendants conspired and combined to deprive plaintiffs of their right to transfer their distribution business and to appropriate the value of the on-going business without just compensation; (2)

defendants imposed illegal territorial constraints; and (3) defendants attempted and conspired to monopolize the newspaper industry.

court, the court established a novel rule governing the burden of proof on the damage issue. In order to ease the nearly "insurmountable barrier" created by this Court's original analysis, the majority established a presumption that the dealers' pricing policies would have been guided by the principle of informed profit-maximization in the absence of the price restrictions illegally imposed by defendants. 548 F.2d at 812. The opinion, however, left defendants the opportunity to "show plaintiffs would have kept their prices beneath a maximizing point despite their violative behavior." *Ibid.*

Following a second trial on damages upon remand, this Court concluded that plaintiffs were entitled only to nominal damages. *Knutson v. Daily Review, Inc.,* 468 F.Supp. 226, 228 (N.D.Cal.1979). Although the Court concluded that the law of the case mandated a finding of the fact of damages, *id.* at 232, the Court found that defendants successfully rebutted the presumption that plaintiffs would have raised their prices in pursuit of profit-maximization with two arguments: First, the evidence indicates that plaintiffs would have delayed for a substantial period reaction to rising market prices; and second, plaintiffs were aware that if they had raised their prices, the publisher would have been forced to take some action jeopardizing plaintiff dealers' independent status, and thus voluntarily would have kept their retail prices below the profit-maximizing price. 468 F.Supp. at 236–239. Thus plaintiff failed to prove the amount of damages. *Id.* at 240. Accordingly, each of the six Daily Review plaintiffs was awarded nominal damages of one dollar trebled to three dollars. *Id.* at 240–241.

 Following that most recent proceeding and decision, plaintiffs moved for an award of attorneys' fees pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, which provides:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Defendants do not dispute that while damages recovered may be insubstantial, plaintiffs are nevertheless entitled to "reasonable attorney's fees" under the Act. Any argument to the contrary would be without merit. The Court's finding of liability and award of nominal damages clearly implies that plaintiffs were in fact "injured in [their] business or property by reason of anything forbidden in the antitrust laws" within the meaning of Section 4, thereby entitling them to "a reasonable attorney's fee." Also, the award of reasonable attorney's fees is necessarily concomitant with this Court's decision that plaintiff's establishment of liability and the fact of damages entitled them to treble damages under 15 U.S.C. § 15 since that statute makes no distinction between the applicability of the treble damages and attorney's fees provisions therein. Thus, although recovery of damages is a prerequisite to an award of attorney's fees, *see Koratron Co. v. Lion Uniform, Inc.,* 409 F.Supp. 1019, 1029 (N.D. Cal.1976); *Locklin v. Day-Glo Color Corp.,* 378 F.Supp. 423, 428 (N.D.Ill.1974), once treble damages are recovered, the award of reasonable attorney's fees is mandatory. *Baughman v. Cooper-Jarrett, Inc.,* 530 F.2d 529, 531 n.2 (3 Cir. 1976), *cert. denied,* 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976). Such fee awards obviously comport with the underlying purpose of Section 4 of facilitating the private enforcement of substantive antitrust policies, which is the "bulwark of antitrust enforcement." *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 139, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). *See* Hammond, Stringent New Standards for Awards of Attorney's Fees, 32 Bus.Law. 523, 524–525 (1977); Comment, 60 Cal.L.Rev. 1656, 1656 (1972). Thus courts have awarded such fees where plaintiffs have recovered only nominal damages. *See Morning Pioneer, Inc. v. Bismarck Tribune Co.,* 493 F.2d 383, 390 (8 Cir. 1974), *cert.*

*denied,* 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974); *Osborn v. Sinclair Refining Co.,* 207 F.Supp. 856, 864 (D.Md.1962), *rev'd on other grounds,* 324 F.2d 566, 575 (4 Cir. 1963).[2] *See also Newberry v. The Washington Post Co.,* 1977–2 CCH Trade Cases 73,131, 73,133 (D.D.C.1977), 438 F.Supp. 470, 483 (D.D.C.1977) ($140,000 in fees awarded where 7 of the 10 plaintiffs recovered only nominal damages); *Finley v. Music Corp. of America,* 66 F.Supp. 569, 571–572 (S.D.Cal. 1946) (reasonable attorney's fee awarded where no damages were recovered);[3] *cf. Burt v. Abel,* 585 F.2d 613, 617–618 (4 Cir. 1978) (fact of nominal damage recovery does not diminish plaintiff's eligibility for attorney's fees in civil rights action); *Perez v. University of Puerto Rico,* 600 F.2d 1, 2 (1 Cir. 1979) (same).

The issue then is not whether plaintiffs are entitled to fees, but what amount constitutes "reasonable attorney's fees" in the instant case.

## I. *APPLICABLE LAW*

Traditionally, in determining the amount of attorney's fees to be awarded in antitrust cases, the courts have placed substantial emphasis on the size of the recovery; indeed, some have apparently applied a straight percentage approach. *See, e. g., Webster Motor Car Co. v. Packard Motor Car Co.,* 166 F.Supp. 865 (D.D.C.1955), *rev'd and cross appeal concerning attorney's fees dismissed as moot,* 100 U.S.App.D.C. 161, 243 F.2d 418 (1957), *cert. denied,* 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38 (1957). However, the percentage fee approach has increasingly come under criticism, given its insensitivity to individual differences in antitrust suits and the professional skill and complexity of work involved in a particular case. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469 (2 Cir. 1974); *In re Gypsum Cases,* 386 F.Supp. 959, 962 (N.D.Cal.

1974), *aff'd* 565 F.2d 1123 (9 Cir. 1977); *Trans World Airlines, Inc. v. Hughes,* 312 F.Supp. 478, 484 (S.D.N.Y.1970, *aff'd and modified on other grounds,* 449 F.2d 51, 79 (2 Cir. 1971), *rev'd on other grounds, sub nom. Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577, 1973); *Illinois v. Harper & Row Publishers,* 55 F.R.D. 221, 224 (N.D.Ill. 1972). Moreover, the percentage approach may not comport with the legislative purpose underlying Section 4 of the Clayton Act of encouraging the private vindication and enforcement of the antitrust laws. *See Phillips v. Crown Central Petroleum Corp.,* 426 F.Supp. 1156, 1170 (D.Md.1977), *vacated without prejudice and remanded on other grounds,* 556 F.2d 702 (4 Cir. 1977). Where a case involves relatively low monetary damages but nevertheless contains potentially important legal precedent, the percentage approach may offer insufficient incentive for the private bar to prosecute such litigation. *See* Comment, 60 Cal.L. Rev. 1656, 1669–1670 (1972).

In response to the inadequacy of that approach, the courts have generally articulated a number of factors to be considered in determining reasonable attorneys' fees, the amount recovered being relegated to only one of many factors. For instance, in *Twentieth Century Fox Film Corp. v. Goldwyn,* 328 F.2d 190, 221 (9 Cir. 1964), the Court of Appeals for this Circuit adopted the following factors:

"(1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government, (2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel, (3) time and labor spent, (4) magnitude and complexity of the litigation, (5) responsibility undertaken, (6) the amount recovered, (7) the knowledge the court has of the conferences, arguments

**2.** *Osborn* was cited with approval in *Perkins v. Standard Oil Co.,* 399 U.S. 222, 223, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970).

**3.** Although the validity of the award is doubtful, *see Koratron, supra,* 409 F.Supp. at 1029; *Locklin, supra,* 378 F.Supp. at 428, the case has

been cited with approval. *See Semke v. Enid Automobile Dealers Ass'n,* 320 F.Supp. 445, 447 (W.D.Okl.1970), *rev'd on other grounds,* 456 F.2d 1361 (10 Cir. 1972); *Proceedings of the Judicial Conference of the Eighth Judicial Circuit,* 70 F.R.D. 247, 310 (1974).

that were presented and of work shown by the record to have been done by attorneys for the plaintiffs prior to trial, (8) what it would be reasonable for counsel to charge a victorious plaintiff, and (9) what contribution shall be made by the defendant toward the fees of plaintiff's counsel."

The relative weight accorded to each factor would vary among particular cases and rested "largely upon the good judgment of the district court." *Ibid.*[4] The court acknowledged that although such fees are usually fixed substantially below actual damages, there may be cases in which the fee exceeds the damage recovery. *Ibid.*

Most recently, a new method of determining reasonable fee awards has emerged.

The approach, called the "lodestar" analysis, was originally articulated by the Third Circuit in *Lindy Bros. Bldrs., Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167–169 (3 Cir. 1974) .(hereinafter referred to as "*Lindy I*"), and *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112–118 (3 Cir. 1976) (hereinafter referred to as "*Lindy II*"), and since followed in a number of other circuits.[5] Under the lodestar approach, the court must first determine the number of hours reasonably spent by plaintiff's attorney on matters upon which plaintiff was successful. *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1216 (3 Cir. 1978).[6] The value of the attorney's time, which is generally reflected in his or her

**4.** Compare the similar approach that has been taken in the courts' determination of reasonable attorney's fees in civil rights cases, the award of which is also statutorily based. In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–718 (5 Cir. 1974), the court utilized the following factors as guidelines: (1) time and labor required, (2) novelty and difficulty of the legal questions, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorney due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) amount involved and the results obtained, (9) experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) nature and length of the professional relationship with the client, and (12) awards in similar cases.

**5.** *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469–474 (2 Cir. 1974) (hereinafter referred to as "*Grinnell I*"); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098–1103 (2 Cir. 1977) (hereinafter referred to as "*Grinnell II*"); *Grunin v. Intern'l House of Pancakes*, 513 F.2d 114, 128–129 (8 Cir. 1975), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *see also Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 614–616 (D.Colo.1974); *EZ Paintr Corp. v. Newell Companies*, 65 F.R.D. 371, 374–375 (E.D.Wis.1974).

**6.** Some courts have held that fees should be denied for clearly meritless claims but granted for work reasonably calculated to advance their client's interest although not completely successful. *See, e. g., Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974), *aff'd* 550 F.2d 464 (9 Cir. 1977). It may be argued that the courts should be lenient towards granting

fees for unsuccessful time in order to give attorneys incentives for engaging in innovative but risky litigation and in view of the impracticalities of recordation and allocation were the courts forced to segregate out non-successful hours. *See* Solovy & Barnard, "Attorneys' Fees in Commercial and Civil Rights Actions," 131 Current Problems in Federal Civil Practice 755, 794–795 (P.L.I.1979) (hereinafter referred to as "131 P.L.I."). However, since "plaintiffs may claim attorneys' fees only with relation to their winnings and not their losings," *Wall Products Co. v. National Gypsum Co.*, 367 F.Supp. 972, 975 (N.D.Cal.1973), denying fees on unsuccessful time spent seems most consistent with Section 4 of the Clayton Act. It should be noted that as to incentives for innovation, the risk and possibly quality multipliers provide adequate rewards. And although practical problems of recordation and allocation may be significant, attorneys should be forewarned that the burden is on them to keep detailed time records. Moreover, while the courts have held that an automatic reduction formula using a simple prorata allocation of successful versus non-successful claims should not be applied, *see, e. g., Hughes v. Repko*, 578 F.2d 483, 487 (3 Cir. 1978), it may be permissible for the district court to apply a percentage reduction based on a just and reasonable estimate where more detailed analysis is impossible. *See Wall Products, supra*, 367 F.Supp. at 975. The Court therefore concludes that to be credited, the time spent must have at least "contributed to," *Hughes, supra*, 578 F.2d at 492 (Garth, J., concurring), if not "produced," *Mills v. Electric Auto-Lite Co.*, 552 F.2d 1239, 1250 (7 Cir.), *cert. denied*, 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977), the benefits achieved.

normal billing rate, is then ascertained. Where a number of attorneys are involved, the court may find it necessary to use different rates reflecting their different amounts of skill, expertise, experience, and reputation. *Lindy I, supra,* 487 F.2d at 167. Multiplying the hours spent by the determined rates, the court arrives at an amount found to constitute reasonable compensation, and this constitutes the "lodestar" of the court's fee determination. *Id.* at 168. The relatively objectively determined "lodestar" is then subject to adjustment (by what have been termed "multipliers") before arriving at the final award in recognition of at least two other more subjective factors. *Ibid.* The first is the contingent nature of success. Where plaintiff's attorney is not guaranteed payment but takes the case substantially on a contingency basis, the attorney must receive additional compensation for the risk undertaken.[7] *See* Hammond, Stringent New Standards for Awards of Attorney's Fees, 32 Bus.Law. 523, 527–528 (1977). The second factor is the extent to which any exceptionally positive or negative quality of an attorney's work mandates increasing or decreasing the lodestar. *Lindy I, supra,* 487 F.2d at 168. A fact to be considered in making such adjustment is the amount actually recovered when compared to defendant's potential liability. *Lindy II, supra,* 540 F.2d at 118.

*See Hughes v. Repko,* 578 F.2d 483, 490–492 (3 Cir. 1978) (Rosenn, J., and Garth, J., concurring), in which the Third Circuit applied the lodestar analysis in a civil rights action, two members of the panel expressly suggested a third stage in the analysis (*i. e.,* a "post-*Lindy* discretionary adjustment," *id.* at 492) in which the district court would have the discretion to make an additional adjustment taking into account the governmental policies underlying the applicable fee statute and substantive rights involved,[8] and such factors as the customary fee for similar work, the amount received in damages, and fee awards made in similar cases in order to assure the overall fairness of the award. In making such an adjustment, however, the district court must properly articulate the factors considered.[9]

The Court of Appeals for this Circuit has yet to apply the lodestar analysis to an attorney's fee claim under Section 4 of the Clayton Act. However, the Ninth Circuit panel in *Brandenburger v. Thompson,* 494 F.2d 885, 890 n.7 (9 Cir. 1974), in remanding the case to the district court, suggested that in determining the amount of reasonable fees to be paid to plaintiff's attorney in a civil rights action, the court might consider the factors listed in *Lindy I.*[10] Following that suggestion, a number of the district court courts in this Circuit have utilized the lodestar analysis.[11] Absent any authority from the Court of Appeals in this Circuit

---

**7.** The value of potential compensation to a rational economic decision-maker equals the size of the award multiplied by the probability of success. The risk multiplier should generally reflect the inverse of that proposition. In *Lindy II, supra,* 540 F.2d at 117, the court discussed in detail the factors that should be considered in determining the risk multiplier.

**8.** *See Hughes, supra,* 578 F.2d at 488–489 (majority opinion); *Keown v. Storti,* 456 F.Supp. 232, 242 (E.D.Pa.1978); *Advanced Business Systems & Supply Co. v. S. C. M. Corp.,* 287 F.Supp. 143, 161 (D.Md.1968) *aff'd and modified,* 415 F.2d 55, 70 (4 Cir. 1969), *cert. denied,* 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970); *Osborn v. Sinclair Refining Co., supra,* 207 F.Supp. at 864.

**9.** *But see Heigler v. Gatter,* 463 F.Supp. 802, 805 n.1 (E.D.Pa.1978) (court questioned whether the additional and more generally based adjustment to the lodestar countenanced in

*Hughes* was still viable in light of potentially contrary language in *Baughman, supra,* 583 F.2d at 1219).

**10.** In that footnote, the *Brandenburger* court also referred to *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d 714. Although *Johnson* did not explicitly involve a lodestar calculation, *Johnson* and *Lindy I* are in fact generally complementary, as *Lindy I* "present[s] a procedure for ordering the examination of factors" listed in *Johnson. Stanford Daily, supra,* 64 F.R.D. at 682.

**11.** *See In re Equity Funding Corp. of America Securities Litigation,* 438 F.Supp. 1303, 1326–1327 (C.D.Cal.1977); *Lockheed Minority Solidarity Coalition v. Lockheed Missiles and Space Co.,* 406 F.Supp. 828, 831 (N.D.Cal. 1976); *In re Gypsum Cases, supra,* 386 F.Supp. at 962 n.3; *Stanford Daily, supra,* 64 F.R.D. at 682–683.

contrary to the court's suggestion in *Brandenburger,*[12] the Court chooses to apply the lodestar analysis to the instant case.[13]

The Court additionally concludes that it is appropriate to apply the three-stage analysis suggested in *Hughes;* the merit in utilizing the *Hughes* approach is demonstrated by the unique posture of the case in which plaintiffs established defendants' liability and fact of damages, but were awarded only nominal damages because of their failure to prove the measure of damages. While low recovery in contrast with defendant's potentially large liability sometimes reflects upon the remarkable quality of plaintiff's counsel work mandating a decrease adjustment through the quality multiplier, *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 168–169 (3 Cir. 1975); *Lindy I, supra,* 487 F.2d at 168, the small recovery by the Daily Review plaintiffs is attributable not to "an unusual degree of skill [or the lack thereof]," *Lindy II, supra,* 540 F.2d at 118, but instead to the given facts of the case. Yet, while the quality multiplier does not countenance these particular circumstances, the remarkable size of recovery cannot be ignored in the determination of awardable fees. Reasonableness of awards under Section 4 of the Clayton Act implies some relationship between the magnitudes of the award and damages recovered.[14] While the courts have increasingly eschewed mechanical application of the per-

**12.** *See Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 775 n.16 (9 Cir. 1977) (while reserving judgment on the percentage-of-the-gross-recovery approach in fee awards, the court made reference to *Grinnell I, Lindy I,* and *Lockheed, supra,* cases utilizing the lodestar approach); *Rosenfeld v. Southern Pacific Co.,* 519 F.2d 527, 530 (9 Cir. 1975) (citing footnote 7 of *Brandenburger* ).

**13.** The Court is not unaware of the fact that the rationale behind the approach undertaken in the *Lindy* and *Grinnell* cases are not directly applicable to the instant case. Those cases did not involve a right to attorney's fees under the Clayton Act but rather the courts' invocation of its inherent equitable powers to award fees where a class action claimant and his attorney have been able to create, preserve, and maintain a common fund by means of a settlement for the benefit of persons who did not participate in the litigation. *See Lindy I, supra,* 487 F.2d at 165. In such instances, the attorney's award comes out of the fund and results in a *pro tanto* diminution of the claimants' recovery. An important motivating factor leading the courts to impose more stringent and reviewable guidelines was the potential for abusive and enormous attorney's fee awards keyed to the size of recovery and not commensurate with the skill and time spent in the litigation in the settlement of class action cases involving huge sums, *Grinnell II, supra,* 560 F.2d at 1098–1099; in fulfilling the judiciary's role "as a fiduciary who must serve as a guardian of the rights of absent class members" who in effect must compete with the attorneys once the fund is established, the thrust of the lodestar analysis was that the "award must be made with an eye to moderation," *id.* at 1099. In the instant case, where reasonable attorneys' fees are statutorily authorized and indeed mandated where treble damages are awarded, and where there is no conflict between the attorneys and their clients since the fee is to be paid directly by defendants, much of the concerns underlying *Lindy* and *Grinnell* are inapplicable. *See Phillips v. Crown Central Petroleum Corp., supra,* 426 F.Supp. at 1170.

Furthermore, the merits of the lodestar analysis are not without criticism. By minimizing the role played by the magnitude of recovery and emphasizing actual time spent, attorneys may have less incentive to seek as high a recovery as possible and may reject quick settlements in order to prolong the proceedings and accumulate billable hours. *See Grinnell I, supra,* 495 F.2d at 471. And the contingency multiplier makes little sense from the defendant's perspective since its application implies that the defendant's liability varies *inversely* with the strength of the case against him. *See Hughes, supra,* 578 F.2d at 491; Comment, 60 Cal.L.Rev. 1556, 1669–1670 (1972).

Yet the dangers of emphasizing the size of recovery, discussed *supra* at p. 1268, outweighs the potential disincentives. And since Section 4 of the Clayton Act concerns not so much punishment of the defendant as much as facilitating the enforcement of important governmental policies, the defendant's interests must be subordinated in resolving the dilemma of the risk multiplier. Finally, although the particular concerns of the *Lindy* and *Grinnell* courts are not directly applicable, the lodestar approach does provide a rational method analyzing the factors other courts have specified and will contribute to the effectuation of greater consistency among district courts' awards and provide a more meaningful basis for appellate review in fee award cases.

**14.** *See Century Hardware Corp. v. Acme United Corp.,* 467 F.Supp. 350, 357 (E.D.Wis.1979); *In re Clark Oil & Refining Corp. Antitrust Litigation,* 422 F.Supp. 503, 511 (E.D.Wis.1976); *Vandervelde v. Put & Call Brokers & Dealers'*

centage of recovery methods of computing fees, the intent of the lodestar analysis was "minimizing the important role traditionally played by the magnitude of the recovery," *Grinnell I, supra,* 495 F.2d at 471, and not to eliminate it totally from the analysis. *See In re Clark Oil, supra,* 422 F.Supp. at 511. Moreover, this additional adjustment is necessary in order to comprehend all of the factors listed in *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 717–718, the case cited with *Lindy I* in *Brandenburger. See Hughes, supra,* 578 F.2d at 492 n.6 (Garth, J., concurring).[15]

## II. *APPLICATION OF THE LODE-STAR ANALYSIS*

### A. *Determining the Reasonable Number of Hours to Be Included in the Lodestar*

■ Plaintiffs seek attorney's fees in connection with a number of discrete items and proceedings which will be dealt with *in seriatim.* Where different rates of compensation are applicable as for paralegal services, the allowable time will be separated. *See In re Anthracite Coal Antitrust Litigation,* 1979–1 CCH Trade Cases ¶ 62,437, at 76,586–76,587 (M.D.Pa.1979); 131 P.L.I. at 797.[16]

### 1. *Preparation of the Lawsuit through the Initial Decision by the District Court (7/73–9/74)*

■ This Court already determined on November 6, 1974, that plaintiffs should be awarded $7,500 in attorney's fees representing 100 hours in connection with their establishing a *per se* violation of Section 1 of the Sherman Act. The Court continues to adhere to its initial determination. Plaintiffs request that hours spent in meeting an affirmative defense tendered by defendants and rejected by both the District Court, 383 F.Supp. at 1355–1356, and the Ninth Circuit Court of Appeals, 548 F.2d at 806 n.12, *i. e.,* that the price fixing agreement should be judged under the rule of reason rather than the *per se* standard, should be included in the lodestar. Although generally, time spent by plaintiffs in overcoming affirmative defenses are compensable where plaintiffs ultimately prevail on such claims and issues,[17] plaintiffs' contentions were argued at the November 6, 1974 hearing and the Court indicated then that the hours spent in dealing with the defense had been considered in the Court's initial $7,500 attorney's fee award.

The original trial was bifurcated, and plaintiffs now request fees in connection with the initial damages proceedings after the Court of Appeals reversed the Court's judgment for defendants on the damage issue. Plaintiffs estimate that their attorneys spent approximately 573 hours on this phase of the case. They acknowledge, however, that roughly 50% of the work pertained to the five Argus dealers who were unable to prove even the fact of damage; thus, plaintiffs seek compensation for 286

---

*Ass'n,* 344 F.Supp. 157, 160 (S.D.N.Y.1972); *Transworld Airlines, Inc. v. Hughes, supra,* 312 F.Supp. at 484; *Voege v. Ackerman,* 70 F.R.D. 693, 695 (S.D.N.Y.1976).

**15.** *Hughes* was cited with approval in *Fountila v. Carter,* 571 F.2d 487, 496 (9 Cir. 1978).

**16.** Although some authorities have suggested that paralegal time should either be denied or not subject to the multipliers, *see Grinnell I, supra,* 495 F.2d at 473, 131 P.L.I. at 796–797, this Court encourages the use of paraprofessionals and finds that their time should be compensated in an award for the attorney's fees, *see Pacific Coast Agricultural Export Ass'n. v. Sunkist Growers,* 1973–1 CCH Trade Cases ¶ 74,523 at p. 94,345 (N.D.Cal.1973), *aff'd,* 526 F.2d 1196, 1210 n.19 (9 Cir. 1975), *cert. denied,* 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204

(1976); *Dorfman v. First Boston Corp.,* 70 F.R.D. 366, 373–374 (E.D.Pa.1976).

**17.** *Transworld Airlines, supra,* 312 F.Supp. at 483; *Stanford Daily, supra,* 64 F.R.D. at 683 n.2. The Court acknowledges that although the *per se* rule applicable to maximum price-fixing is well established, *Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), defendants' contention that the rule of reason analysis should have been applied to the instant case, although without direct authority, was not frivolous. *See Knutson, supra,* 468 F.Supp. at 231–232 n.7. Thus the Court agrees that time spent by plaintiffs' counsel in meeting this defense was not insubstantial and should be considered in the award.

hours representing the time spent on the successful Daily Review plaintiffs. However it is now evident that these plaintiffs were only able to prove the fact and not the measure of damages. As analyzed by the Court of Appeals, 548 F.2d at 813, the key evidence establishing the fact of damages was the demonstration that "despite circulation drops their net profits would have been higher in some amount." Based upon the supporting affidavits submitted by plaintiffs and the Court's familiarity with the proceedings, the Court finds that 100 hours represents a reasonable amount of time spent on developing and establishing that evidence.

### 2. Equitable Relief (9/10/74–11/6/74)

■ Subsequent to the Court's decision after the first trial, further proceedings were held regarding certain equitable relief sought by plaintiffs. Plaintiffs seek attorneys' fees in connection with their success in obtaining a court order mandating that the offer of employment to plaintiff dealers be held open in the absence of good cause, see *Knutson v. Daily Review, Inc.,* 401 F.Supp. 1374 (N.D.Cal.1975). That order, orally issued on October 30, 1974, effectively extended the equitable relief granted by this Court in its initial opinion. 383 F.Supp. at 1389. The $7,500 attorney's fee award granted a week later on November 6, 1974, already accounted for the obtained relief. Therefore, the additional 19 hours claimed in this matter cannot be included in the lodestar.[18]

### 3. Proceedings in the Court of Appeals (9/25/74–2/11/77)

■ It is well established that time spent on appeal may be included in a fee award under Section 4 of the Clayton Act. *Perkins v. Standard Oil Co. of Calif.,* 474 F.2d 549, 553 (9 Cir. 1973), *cert. denied,* 412 U.S. 940, 93 S.Ct. 2778, 37 L.Ed.2d 400 (1973); *Pitchford Scientific Instruments v. Pepi,* 440 F.Supp. 1175, 1178 (W.D.Pa.1977), *aff'd* 582 F.2d 1275 (3 Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979); Plaintiffs allege that a total of 241 hours were spent by Messrs. Bertain and Fine on appeal, but seek compensation for only one-half of that time which is roughly allocable to the prosecution of the successful matters, *i. e.,* reversal of the district court's findings as to damages. Factoring out unsuccessful motions and that portion of the main briefing devoted to unsuccessful issues, see *Vandervelde, supra,* 344 F.Supp. at 160, the Court finds that 120 hours representing Messrs. Bertain and Fine's time constitutes the just and reasonable allowance.[19]

Plaintiffs also argue that approximately 60 hours spent by Mr. Carter on a supplemental brief filed in the Court of Appeals be included. However, that brief sought certain equitable relief which was not granted by the Court of Appeals. Plaintiffs fail to demonstrate how that brief materially contributed to their limited suc-

---

**18.** Since the award reflecting the attainment of equitable relief was based on the Court's equitable powers and not Section 4 of the Clayton Act, it is unnecessary to reach the issue whether the 1976 amendment of Section 16 of the Act, 15 U.S.C. § 26, permitting the award of attorney's fees where a court issues injunctive relief in an antitrust case can be retroactively applied to the instant case. The Court notes, however, that under the authority of *Alphin v. Henson,* 552 F.2d 1033, 1034–1035 (4 Cir. 1977), *cert. denied,* 434 U.S. 823, 98 S.Ct. 67, 54 L.Ed.2d 80 (1977), the Act may apply retroactively, at least under certain circumstances. See *City of Mishawaka, Ind. v. Amer. Elect. Power Co., Inc.,* 465 F.Supp. 1320, 1344–1345 (N.D.Ind.1979). *Cf. Calnetics Corp. v. Volkswagen of America, Inc.,* 353 F.Supp. 1219, 1224–1225 (C.D.Cal.1973) (court awarded at-torney's fees in a private action under Section 7 of the Clayton Act in which plaintiffs obtained equitable relief notwithstanding the lack of statutory authority therefor).

**19.** It should be noted that this number of hours found compensable nearly equals the time (100 hours) for which this Court awarded the initial fee in connection with plaintiffs' establishing a Section 1 violation. Although fees for services rendered on appeal will commonly be substantially less than fees for trial work, since most of the evidentiary development is done at trial, see *Perkins, supra,* 474 F.2d at 552–553, the Court cannot conclude that the complexity of the issues on appeal and the favorable results obtained should have required less time than proving the *per se* Section 1 violation at trial.

cess on appeal.[20] Accordingly, that time will be disallowed from the computation.[21]

#### 4. *Proceedings in the Supreme Court*

Both parties petitioned for and were denied writ of certiorari in the United States Supreme Court. Plaintiffs assert that Mr. Fine spent 48 hours in preparing the petition and a brief in opposition to defendants' petition. Although the district court in *Pitchford Scientific Instruments Corp., supra,* 440 F.Supp. at 1178, refused to exclude services arising out of unsuccessful certiorari proceedings, such compensation directly conflicts with the principle that fee awards should "not include compensation for time expended upon theories of liability or overdrawn items of damage ultimately rejected," *Vandervelde, supra,* 344 F.Supp. at 160. Plaintiffs' efforts in petitioning for certiorari did not contribute to their success nor to the resolution of the issues in the case, and therefore do not warrant compensation. However, their opposition to defendants' petition was successful inasmuch as their limited victory in the Court of Appeals was effectively sustained. The Court includes 24 hours of Mr. Fine's time attributable to the preparation of that document in the lodestar.[22]

#### 5. *Arbitration (1/75–6/75)*

In the judgment following the first trial, the Court exercised its equitable powers in ordering that certain offers of employment by defendants be left open until a date certain. Subsequently, certain of the plaintiffs were refused employment. The issue of good cause for the refusals was sub-

mitted to an arbitrator who upheld defendants' refusal. Plaintiffs now seek fees for 55 hours spent by Mr. Fine in those arbitration proceedings.

The Court concludes that these fees must be denied. The arbitration proceedings were part of the Court's relief based solely upon its equitable powers and not in direct enforcement of the antitrust laws. Thus fees could not be awarded under Section 4 of the Clayton Act. *See Baughman, supra,* 583 F.2d at 1215–1216. Relegated to the Court's equitable power to grant attorney's fees, the lack of any "overriding consideration of justice," *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717–718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), especially in light of plaintiffs' failure to substantially prevail in those proceedings, compels the denial of attorney's fees. Furthermore, the Court notes its earlier denial of plaintiffs' motion for such fees, Minuted Order filed November 25, 1974, and remains convinced of the correctness of that ruling.

#### 6. *District Court Proceedings Regarding Modification of Judgment (May–July 1975)*

On July 8, 1975, the Court modified its judgment in deleting paragraph 7 which required defendants to continue their offer of employment to plaintiffs. The Court found that defendants had not violated the terms of the judgment and that the restrictions placed on defendants were no longer warranted by existing conditions. The Court did award severance pay to a number

---

20. The Court of Appeals quotation in a footnote, 548 F.2d at 806, n.13, of a page from the briefs Appendix and suggestion that the district court might require defendant Sparks to inform plaintiffs of their right freely to resell the newspapers at prices other than the suggested price, *id.* at 807, are insufficient to warrant any compensation for preparation of the supplemental brief. The letter quoted was found not to constitute illegal coercion by defendants, *id.* at 806–807, and the Court of Appeals' suggestion was not taken up by this Court on remand.

21. The Court of Appeals ordered that "[t]he parties shall bear their own costs on appeal."

548 F.2d at 815. In view of the fact that the term "costs" ordinarily does not encompass attorney's fees, see 28 U.S.C. § 1920; Fed.R. Civ.Pro. 54(d); 10 C. Wright & A. Miller, Federal Practice and Procedure, § 2675, pp. 179–181 (1973), and the fact that attorneys' time spent on appeal is generally compensable under the Clayton Act, it is evident that the appeals court order was not intended to have any bearing on the issue presently before the Court.

22. The equities favor plaintiffs in this regard since counsel's services rendered in preparation of the briefs was occasioned by an affirmative action initiated by defendants.

of the individual plaintiffs. Plaintiffs seek attorney's fees in relation to services rendered in those proceedings. Again, however, it is difficult to conclude that plaintiffs substantially prevailed since the Court discontinued the advantageous equitable relief previously obtained by plaintiffs. More importantly, as discussed above, those proceedings were not part of the prosecution of the substantive antitrust claims and therefore are not compensable under the Clayton Act. The Court refuses to exercise its discretion in plaintiffs' favor.

### 7. Damage Retrial (6/1/77–10/13/78)

Plaintiffs claim a substantial number of hours devoted to the damages retrial mandated by the Court of Appeals remand. Although plaintiffs' effort was met with only limited success, the Court's general conclusion that the nominal recovery does not bar applicability of Section 4 of the Clayton Act requires that a reasonable number of hours for services performed in preparation of the second trial be included in the calculation. Such fees cannot be denied on the grounds of duplication of work occasioned by the two trials since

> "[i]t seems clear that it is reasonably necessary to retry a case when an appellate court directs a retrial. Counsel are not to be penalized by being required to work for nothing as punishment for failure to know at the first trial what the Court of Appeals was going to do." *Pitchford Scientific Instruments Corp., supra,* 440 F.Supp. at 1178.

Moreover, whereas the Court may disallow credit for hours spent on a second trial where retrial is caused solely by the prevailing party's counsel's error, *Baughman, su-*

pra, 583 F.2d at 1216,[23] the retrial in the instant case is not attributable to any fault on the part of plaintiffs or their counsel. In fact, in view of the Court of Appeals encouraging language regarding the burden of proof as to damages, all of counsel's efforts devoted to retrial certainly were in the normal exercise of reasonable professional diligence. Given the reasonable basis for urging the establishment of damages provided by the Court of Appeals opinion, "any exclusion of the house [*sic*] spent developing this evidence would be unfair." *DeFilippo v. Ford Motor Co.,* 378 F.Supp. 456, 472–473 (E.D.Pa.1974),[24] *rev'd on other grounds,* 516 F.2d 1313, 1321 (3 Cir. 1975), *cert. denied,* 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 141 (1975).

For services rendered in connection with this portion of the case, plaintiffs claim a total of 320 hours for Messrs. Bertain, Fine, and Stadum, 22.5 hours for Mr. Carter, and 963.75 hours for Messrs. Beaty and Norton who were employed by counsel as paralegal assistants. The factual issues were relatively complex especially in light of the ambiguity of the legal issues and standards applicable on remand. *See, e. g.,* the discussion of this Court's interpretation of the Ninth Circuit opinion at 468 F.Supp. at 232–235. Taking into account the extent of additional discovery and research reasonably necessitated by the retrial, considering the supporting affidavits, and using as a rough guide for comparison the number of hours the Court allowed in proving the Section 1 liability and the fact of damages, the Court concludes that all of the lawyers' time and the paralegals' time may be reasonably included in the lodestar.[25]

**23.** In *Baughman,* the Court of Appeals for the Third Circuit found that "the first trial would have sufficed to establish liability but for the egregious error of plaintiff's counsel in addressing the jury * * *. In such circumstances, plaintiff should not be compensated for the extra hours incurred solely because his counsel committed so fundamental an error * * *." 583 F.2d at 1216.

**24.** In *DeFilippo,* the court allowed credit for hours spent on issues which the court did not

find irrelevant until midway through trial. 378 F.Supp. at 472–473.

**25.** The number of hours claimed does not appear to be out of line with those commonly involved in antitrust litigation generally. *See* Comment, 60 Cal.L.Rev. 1656, 1679–1682 (1972) (Appendix—Table of antitrust attorney's fee cases listing, *inter alia,* the amount of single damages, number of hours claimed, and fee awarded).

### B. *Determining the Rate of Compensation*

After determining the number of compensable hours, the Court must then attempt to value those services. As the Court pointed out in *Lindy I, supra,* 487 F.2d at 167, "The value of an attorney's time generally is reflected in his normal billing rate. A logical beginning in valuing an attorney's services is to fix a reasonable hourly rate for his time—taking account of the attorney's legal reputation and status (partner, associate)." Plaintiffs seek compensation for Messrs. Bertain, Fine, and Stadum at $75 per hour before November 6, 1974 (when the Court made the initial fee award using the $75 per hour rate) and $90 per hour thereafter. They contend that $90 per hour represented the prevailing rate in San Francisco for antitrust counsel of comparable experience.[26] Although $90 an hour is probably not an exorbitant figure,[27] the fact is that throughout the course of their involvement in this litigation,[28] Messrs. Bertain, Fine, and Stadum's normal billing rate has been $75 an hour. Stadum Affidavit, p. 2; Second Affidavit of Fine, p. 6; Plaintiffs' Memorandum in Support of

**26.** As set forth in their affidavits, each of the three had well over ten years' experience and have particular expertise in antitrust litigation.

**27.** *See Lockheed Minority Solidarity Coalition, supra,* 406 F.Supp. at 833, in which the court noted that the parties agreed that the leading San Francisco law firms as of late 1975 charged between $40 an hour for associates to $90 an hour for partners as fees in protracted litigation.

**28.** Defendants contend that under *Perkins, supra,* 474 F.2d at 553, fees for services rendered on appeal must be compensated at rates substantially below those awarded for services in the trial court. However, the court merely stated:

"For these reasons, we believe that in assessing 'a reasonable attorney's fees' for appellate services, a court must keep in mind that the appeal is not a separate lawsuit, but rather a continuation of a lawsuit which has progressed considerably by the time counsel commences work on the appeal. Accordingly, the amount allowed for attorneys' services on appeal should generally be less than that awarded for services at the trial of the same case."

Attorney's Fee Application, p. 5. Moreover, this rate falls well within the range of rates found reasonable in other cases within this District.[29] Similarly, the Court fixes Mr. Carter's rate at $50 an hour, his normal billing rate.

Plaintiffs urge that $30 per hour constitutes a fair rate for paralegal services. The Court finds $20 per hour the appropriate figure. Both Messrs. Norton and Beaty state that during their employment with Mr. Fine, their time has been billed to clients at $20 per hour. Norton Affidavit, p. 2; Beaty Affidavit, p. 2.[30]

### C. *Calculating the Lodestar*

In addition to the 100 hours already awarded in 1974, the attorneys' time for which credit will be allowed totals 564 hours of partners' time and 22½ hours of associate's time. At the rates of $75 and $50 per hour, respectively, reasonable attorneys' fees equal $43,425. Adding the reasonable fees for paralegal services amounting to $19,275 (963.75 hours times $20 an hour), the Court arrives at a lodestar figure of $62,700.

The court only remarked that the total *amount* of attorney's fees should generally be less for appeal as compared to trial work. This Court finds no reason why the *rate* for appeal work should be reduced, particularly where as in the instant case, plaintiffs' counsel did a commendable job in the Court of Appeals.

**29.** *See Stanford Daily, supra,* 64 F.R.D. at 685 ($50/hr) (1974); *In re Gypsum Cases, supra,* 386 F.Supp. at 968 ($100/hr for partners and $50/hr for associates) (1974); *Pacific Coast Agricultural Export Ass'n, supra,* 1973–1 CCH Trade Cases at 94,344 n.2 ($60–75/hr) (1973).

Since the Court decides that a straight $75 is the proper hourly rate, the issue of whether historical rates at the time services are rendered or rates current at the time of the award generally should be utilized need not be reached. *See In re Equity Funding Corp. of America Securities Litigation, supra,* 438 F.Supp. at 1331.

**30.** Compare the $15 per hour rate found reasonable for services of law clerks in *In re Gypsum Cases, supra,* 386 F.Supp. at 968; *Pacific Coast Agricultural Export Ass'n, supra,* 1973–1 CCH Trade Cases at 94,345.

### D. *Contingency Multiplier*

In contemplating an adjustment for risk undertaken, the court must be mindful of the fact that "the proper calculation of the lodestar is by definition the calculation of a reasonable compensation for the time expended by the attorney." *Baughman, supra,* 583 F.2d at 1219. Where the lodestar is a significant amount in comparison to the amount awarded plaintiffs in damages, the court should be reluctant to increase the fee award through the contingency multiplier. *Heigler v. Gatter, supra,* 463 F.Supp. at 805; *Baughman, supra,* 583 F.2d at 1218; *Lindy I, supra,* 487 F.2d at 168.

Under *Lindy II, supra,* 540 F.2d at 117, the court is to consider the following factors in determining whether a contingency increase is warranted:

1. Analysis of plaintiff's burden—considering the legal and factual complexity of the case, the probability of defendant's liability, whether damages would be difficult or easy to prove;

2. Risks assumed in developing the case—number of hours and out-of-pocket expenses risked without guaranteed compensation; and

3. Delay in receipt of payment for services rendered.

As to plaintiffs' burden, while it is clear that the case was generally complex, the cause of action in which plaintiff prevailed—vertical price-fixing constituting a *per se* violation of Section 1 of the Sherman Act—was relatively simple and easy to prove. As the Court previously observed, "What was established in this case was a violation of Section 1, which violation was contained in the four corners of the dealers' agreement." Although the chance of success on plaintiffs' other claims were more speculative, that fact is irrelevant since they did not prevail on those claims and cannot receive attorneys' fees therefor. Admittedly, proving damages was extremely difficult and risky. But that fact is a double-edged sword.

"For although it might seem at first glance to entitle counsel to a large additur, it raises other questions that point in the opposite direction. This is emphatically not a case where counsel succeeded either against long odds or in recovering a substantial damage award. Indeed, Kane's ultimate recovery was a modest one, and one, we believe, that could reasonably have been anticipated by a person familiar with the facts of the case. Proof of damage resulting from the violations was quite speculative. * * *

"In sum, we cannot in good conscience approve an increase in the base or 'lodestar' figure set forth above. The case presented fairly straightforward issues of anti-trust law in a factually uncomplicated setting. Probability of successfully establishing liability was exceptionally high, but damages were speculative at best. And although we do not question the competence of petitioner nor the sincerity with which the claims were pursued, we do believe the size of the recovery should have come as no surprise." *Kane v. Martin Paint Stores, Inc.,* 439 F.Supp. 1054, 1058–1059 (S.D.N.Y.1977), *aff'd* 578 F.2d 1368 (2d Cir. 1978).

Thus, although counsel undertook a substantial risk in developing the case,[31] no upward adjustment for the risk can be granted.

Because of the protracted nature of the case, however, the Court will increase the lodestar by 15% to compensate for the delay in receipt of payment,[32] bringing the total award to $72,105. While inflation does not constitute an automatic basis for a

---

**31.** Plaintiffs' counsel have allegedly invested a total of 3,771.5 hours in the case and have received total compensation of $23,287 thus far. Plaintiffs' Memorandum of Points and Authorities, p. 26; Third Affidavit of Fine, p. 3. Although plaintiffs agreed to pay all the costs of litigation, Mr. Fine has paid $2,405.52 in costs. *Ibid.*

**32.** The bulk of the fees were earned in the appellate proceedings (1974–1975) and in the damages retrial (1977–1978). The 15% adjustment properly reflects the cost of length of the delay involved.

contingency increase since billing rates commonly take deferred payment into account, the delay is nonetheless a factor the court may legitimately consider, *Lockheed Minority Solidarity Coalition, supra,* 406 F.Supp. at 834.[33] The increase in the instant case is particularly warranted by the flat compensation rate the Court has chosen to apply to the entire course of litigation.

### E. *Quality Multiplier*

 Since the quality of an attorney's work generally is a component of the reasonable hourly rate factored into the lodestar, an additional adjustment should be effected to reflect "exceptional services only." *Lindy II, supra,* 540 F.2d at 117–118; *Baughman, supra,* 583 F.2d at 1219. An important factor in determining such adjustment is the result obtained by verdict or settlement. *Lindy II, supra,* 540 F.2d at 118. In view of the nominal recovery plaintiffs acknowledge that no upward adjustment is warranted in this regard. And while counsel is to be commended for their efficient use of their time and for their effective employment of paralegal assistants, the Court cannot conclude that "an unusual degree of skill" was employed. *Lindy I, supra,* 487 F.2d at 168. Therefore, the Court will not apply any quality multiplier.

### F. *Adjustment to Assure Reasonableness of the Fee Award*

 The final adjustment borrowed from *Hughes* allows the court to consider the "important substantive purposes" of the antitrust laws and fee provision and to assure the reasonableness of the final fee award in taking into account the magnitude

of damages recovered and the fee awards made in similar cases. *Hughes, supra,* 578 F.2d at 491–492 (Garth, J., concurring). For instance, where the plaintiff has succeeded in establishing an important legal principle or otherwise has made a substantial contribution to the vindication of important governmental policy, this may militate against a substantial downward adjustment which would otherwise be dictated by a small monetary recovery. *See Hughes, supra,* 578 F.2d at 490–491 (Rosenn, J., concurring); *Osborn, supra,* 207 F.Supp. at 864; *Newberry, supra,* 1977–2 CCH Trade Cases at 73,131. *See also Finley, supra,* 66 F.Supp. at 571–572.

In the instant case, plaintiffs succeeded in establishing in this Circuit a novel and potentially significant principle in vertical price restraint cases governing the burden of proof of damages. The majority of the panel in this case held that the district courts are to "assume that, absent evidence to the contrary, a dealer would have raised his prices had it been profitable to do so; that is, dealers are profit maximizers." 548 F.2d at 812 (footnote omitted). While the contours of that principle remain to be clearly defined, the rule may well have ramifications beyond the instant case.[34]

 The countervailing consideration, of course, is the nominal damage recovery. As discussed above,[35] there must be some relation between the benefits attained and the fee awarded. Another factor counseling for downward adjustment is the fact that the Court has found no case in which a court has granted a fee equivalent to the lodestar in the instant case where only nominal damages were recovered. In *Osborn, supra,* 207 F.Supp. at 864, the trial court awarded $14,000 in attorney's fees where

---

**33.** It should be noted that allowing adjustment for the deferred payment furthers the policy of deterring dilatory tactics in complex litigation. *See* 131 P.L.I. at 805.

**34.** *Cf. Newberry v. Washington Post Co.,* 438 F.Supp. 470, 483 (D.D.C.1977), in which the court, in a similar case, awarded nominal damages to certain newspaper distributors because of their failure to prove that they would raised their prices in the absence of illegal price re-

straints imposed by defendants. The court pointed to the potential loss of subscribers as a "major deterrent" to any price increase. Assuming plaintiffs could have shown that their actual prices were below the profit-maximizing price, the application of the presumption created by the Court of Appeals in this case might have effected a different result.

**35.** See discussion, *supra,* at p. 1271.

plaintiff recovered $325 in damages. In *Morning Pioneer, Inc., supra,* 493 F.2d at 390, the Court of Appeals upheld a fee award of $7,350 where plaintiffs obtained only nominal damages.

Weighing these factors, the Court concludes that a downward adjustment (or what might be termed the application of an "inverse multiplier") of 25% is mandated. The final award of $54,078.75 is admittedly substantial and exceeds those granted in *Osborn* and *Morning Pioneer,* and although "[t]he amount claimed is very large relative to the monetary results achieved," "[i]t is clear, however, that the effective enforcement of the antitrust laws, particularly in the area of price fixing, must and should rely in part, as Congress intended, upon effective treble damage suits brought by private plaintiffs." *Newberry, supra,* 1977–2 CCH Trade Cases at 73, 133.[36]

Accordingly, IT IS HEREBY ORDERED that plaintiffs be awarded fifty four thousand seventy-eight and seventy-five hundredths dollars ($54,078.75) in attorneys' fees.[37]

IT IS HEREBY FURTHER ORDERED that counsel for plaintiffs shall prepare an appropriate form of judgment and submit it to the Court for execution within ten (10) days hereof.

---

**36.** In *Newberry,* seven of the plaintiffs recovered only nominal damages, and three established an aggregate of approximately $23,000 in damages. 438 F.Supp. at 483; order regarding damages and costs filed November 2, 1977. Notwithstanding this relatively small recovery, plaintiffs were awarded $140,000 in attorney's fees. *Newberry, supra,* 1977–2 CCH Trade Cases at 73,133.

**37.** The award is an aggregate sum granted to plaintiffs exclusive of the award previously made; the Court does not fix a fee for each attorney. Since the right to recover attorneys' fees is that of the injured party and not the attorneys, *Carpa, Inc. v. Ward Foods, Inc.,* 536 F.2d 39, 52 (5 Cir. 1976); *Wall Products, supra,* 367 F.Supp. at 973, it is for the successful plaintiffs to deal with the various attorneys acting on their behalf. *See Newberry, supra,* 1977–2 CCH Trade Cases at 73,132.