**Richard W. DYKE, dba Western Stations Co., Plaintiff,**

v.

**GULF OIL CORPORATION, a Pennsylvania corporation, Defendant.**

**COLVIN OIL COMPANY, an Oregon corporation, Plaintiff,**

v.

**GULF OIL CORPORATION, a Pennsylvania corporation, Defendant.**

**F.O. FLETCHER, INC., dba Fletcher Oil Company, Plaintiff,**

v.

**GULF OIL CORPORATION, a Pennsylvania corporation, Defendant.**

**Civ. Nos. 77–10–PA, 77–791–PA and 77–849–PA.**

United States District Court,
D. Oregon.

Aug. 23, 1983.

John L. Schwabe, Neva T. Campbell, Mary E. Egan, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for plaintiff.

John R. Brooke, Wood, Tatum, Mosser, Brooke & Holden, Portland, Or., Jack D. Fudge, Michael L. Hickok, Douglas J. Del Tondo, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendant.

PANNER, District Judge.

The remaining issue in these consolidated cases is the award of attorneys' fees. I previously ruled that such an award was appropriate pursuant to section 210(b) of the Economic Stabilization Act, 12 U.S.C. § 1904, note. Defendant argues that a recent decision of the Temporary Emergency Court of Appeals precludes me from awarding attorneys' fees in the circumstances of this case. Although TECA's decision in *Eastern Air Lines, Inc. v. Atlantic Richfield,* 712 F.2d 1402, (Em.App.1983), contains strong dicta on the subject, I find the decision is not controlling.

In *Eastern Air Lines,* TECA upheld the decision of a district court *not* to award attorneys' fees. The appeals court based its decision partly on what it regarded as the trial court's "sound application of discretion." *Id.* at 1413. TECA was not required in that opinion to carefully analyze the language of the statute authorizing attorneys' fees. Such an analysis reveals that Congress did not specify that attorneys' fees could only be awarded in cases of intentional overcharges.

The relevant statute provides:

the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

(1) an amount not more than three times the amount of the overcharge upon which the action is based, or

(2) not less than $100 or more than $1000;

except that in any case where the defendant establishes that the overcharge was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge . . . .

12 U.S.C. § 1904 note (1980).

It seems quite clear that the language of exception beginning with the word "except" modifies only the language that follows the word "plus." That is, a court may discretionarily award attorney's fees. In addition, the court may award treble damages or damages in an amount between $100 and $1,000, *unless* the defendant establishes the overcharge was unintentional and resulted from a bona fide error.

I hold that a reasonable award of attorneys' fees in these cases is $750,000.00.

## BACKGROUND

These actions were brought in 1977 against Gulf Oil Corporation ("Gulf") pursuant to the Emergency Petroleum Allocation Act, 15 U.S.C. § 751, *et seq.* and various U.S. Department of Energy regulations. Plaintiffs sought to recover overcharges for gasoline sold by Gulf. There were years of extensive discovery and pretrial proceedings before the case was set for trial. Because of the complexity of the issues involved, the trial was split into several phases. In phase I, I held that Gulf's method of

setting plaintiffs' May 15, 1973 base price was improper. In phase II, I ruled that a reasonable existing May 15, 1973 classification for plaintiffs was the three-tier geographic prices paid by a nonbranded distributor in California. In phase III, I selected the theory and means of calculating plaintiffs' damages. As a result of that ruling the parties stipulated to an amount of damages of $2,000,000.00 for Dyke, $745,000.00 for Colvin, and $790,000.00 for Fletcher. In phase IV, I held that Fletcher was a real-party-in-interest. Finally, in phase V, I ruled that an award of attorneys' fees in these cases was appropriate. The trial proceedings were spread over a period of seven months.

## DISCUSSION

### A. Standards.

The amount of reasonable attorneys' fees is within the court's discretion. *Sapper v. Lenco Blade, Inc.,* 704 F.2d 1069, 1073 (9th Cir.1983). While the statute is silent on what is "reasonable," many courts have enumerated factors for consideration. The Ninth Circuit has adopted the twelve factors recited in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied sub nom., Perkins v. Screen Extras Guild, Inc.,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Although it is not necessary for the court to specifically discuss each factor, *Sapper,* 704 F.2d at 1073, the court may abuse its discretion in setting fees if it does not at least consider the various factors and discuss the relevant ones. *Harmon v. San Diego County,* 664 F.2d 770, 772 (9th Cir. 1981); *O'Neil v. City of Lake Oswego,* 642 F.2d 367, 370 (9th Cir.1981). A court may rely upon a single factor if it appears to be controlling and so long as the remaining factors are considered. *Vanelli v. Reynolds School District # 7,* 667 F.2d 773, 781 (9th Cir.1982).

The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill necessary to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relations with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19. To these factors I add another: the attorneys' efforts to bring the matter to a prompt and reasonable conclusion.

Before turning to the relevant factors in these cases I note that this circuit has warned against inflexible application of the *Johnson* factors. In *Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830 (9th Cir.1982), the court reviewed the "lodestar" method of setting fees utilized in several other circuits. *E.g., Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980); *Furtado v. Bishop,* 635 F.2d 915 (1st Cir.1980); *Detroit v. Grinnell Corp.,* 560 F.2d 1093 (2d Cir.1977); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973). Lodestar analysis involves the calculation of a "lodestar" figure by multiplying the number of attorney hours times the prevailing billing rate for comparable legal services. That lodestar figure is then adjusted based on the quality of work and the risk taken by the attorney. *Moore,* 682 F.2d at 840.

The *Moore* panel noted with approval the increased use by district courts of a combined *Johnson* and lodestar approach. *Id.* While the technique varies from case to case, this "blended" approach involves use of the lodestar analysis as "a procedure for ordering the examination of [the] factors listed in [*Kerr*]." *Moore,* 682 F.2d at 840, citing *In re Capital Underwriters, Inc. Securities Litigation,* 519 F.Supp. 92, 100 (N.D.Cal.1981), *aff'd in part, remanded in part,* 705 F.2d 466 (9th Cir.1983), and *Knutson v. Daily Review, Inc.,* 479 F.Supp. 1263, 1270 n. 10 (N.D.Cal.1979). Typically, a

court utilizing the blended approach would examine the first element of the lodestar formula, "hours spent," just as it would examine the *Johnson* element of "time and labor required." The remaining *Johnson* elements would then be used to determine the second lodestar factor, "hourly rate," and to augment or decrease the overall award based on quality or contingency consideration. *Moore,* 682 F.2d at 840–41.

■ While there is obvious merit to this blended method, I prefer not to give undue emphasis to mechanical, mathematical calculations. In most cases, the work product of an attorney is not easily quantified. Use of the *Johnson* factors to establish the lodestar elements creates the unjustified appearance of reliability and "scientific" methodology. The setting of fees by the district court necessarily requires the use of subjective analysis. Such analysis is imprecise and is therefore entrusted to the discretion of the district court because of that court's intimate knowledge of the proceedings. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

■ The number of hours expended by the attorneys and the prevailing hourly rate must, of course, be examined and considered by the court. I am not required, however, to make precise calculations on the record. *Hensley,* 103 S.Ct. at 1940. The requirements established by *Kerr* can be met by a review of the relevant factors and disclosure of the court's reasoning. *Harmon v. San Diego County,* 664 F.2d at 772.

B. *Application.*

1. Time and Labor Required.

These were difficult, complex cases involving an area of the law that has received very little exploration. The "guiding" regulations were often tortuously constructed and contradictory. Combining these circumstances with defendant's aggressive and persistent defense, plaintiffs' attorneys necessarily expended considerable time and effort. Specifically, plaintiffs' attorneys have submitted affidavits showing that they spent 228 hours in trial and approximately 7437 hours in research and nontrial work. Additionally, they claim 1543 hours of paralegal work.

■ I find that the submitted attorney hours were reasonably expended in the prosecution of these cases. While I am not bound by the hours claimed by an attorney, *e.g., Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1117 (9th Cir.1979), I find that the hours claimed here were reasonably within the range of time needed to achieve the successful results. No hours were spent on unrelated claims upon which plaintiffs did not prevail. *See Sethy v. Alameda County Water District,* 602 F.2d 894, 898 (9th Cir.1979), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).

■ I reject, however, inclusion of secretarial time within the paralegal classification. The approximately 1000 hours of such secretarial time constitute an overhead expense which is recoverable only as a part of the attorneys' time. *E.g., Kania v. United States,* 650 F.2d 264, 269, 227 Ct.Cl. 458, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981).

2. Novelty and Difficulty of Questions Raised.

■ These were complex cases that raised significant questions of both law and fact. Novel issues of law were presented. The ever changing regulatory scheme presented an interpretive challenge to both counsel and court. The complexity of these cases support a substantial award of attorneys' fees to the plaintiffs.

3. Skill Necessary to Perform Legal Services Properly.

It is clear that the novelty and difficulty of the questions raised by these cases required commensurate skill and talent.

### 4. Preclusion of Other Work.

I do not find preclusion of other work to be a significant factor in these cases. Accordingly, I give it no weight.

### 5. Customary Fee.

Plaintiffs suggest an hourly trial fee ranging from $66 to $165 for the various attorneys. The range for nontrial time is $60 to $150 per hour. Clerk time and other paralegal time is billed at $35 per hour. The suggested ranges reflect the relative value of experienced attorney time in contrast to inexperienced associate time.

The suggested rate structure is higher than fees customarily awarded in this district. The subject matter of these cases justifies higher than usual hourly fees. A survey of awards in this court illustrate the court's general reluctance to award fees in excess of $100 per hour. A substantial portion of these awards were based on hourly fees ranging from $50 to $80.

Accordingly, I hold that a range of $80 to $100 for all attorney time is appropriate in these cases. Plaintiffs' suggested rate of $35 per hour for paralegal work is within the range of acceptable levels. Considerable expertise was required of the paralegals in these cases.

### 6. Contingent or Fixed Fee Arrangement.

 Plaintiffs' fees were not on a contingent fee basis. Hourly rates were fixed and predetermined. Defendant argues that an award in excess of that actually billed to the plaintiffs is excessive and punitive in nature. I reject that argument. At the time the fee arrangement was made, neither the client nor the attorneys had the opportunity to determine a reasonable fee in light of the various factors that I can now evaluate. No one could speculate as to the amount of the recovery. It is the court's responsibility to set a reasonable fee award. The statute provides for the award of a reasonable fee, not the fee agreed upon by the parties and their attorneys. *See Johnson*, 488 F.2d at 718 (fee arrangement not decisive in court's determination of reasonable attorney fee award).

### 7. Time Limitations Imposed by the Client.

I know of no limitations placed upon the attorneys by the clients.

### 8. Amount of Damages.

Plaintiffs were highly successful. The damages, coupled with the award of prejudgment interest, constitute a substantial figure. The amount recovered, though not bearing directly on the determination of a reasonable attorney fee award, is an important factor in measuring the effectiveness and competency of the attorneys. The recovery in these cases supports a substantial fee award.

### 9. Experience, Reputation and Ability of the Attorneys.

Each of plaintiffs' four principal attorneys has demonstrated ability in these cases and in other cases before the court. Lead counsel, Ms. Campbell, has engaged in extensive business and business-related litigation and has particular expertise in Emergency Petroleum Allocation Act litigation.

### 10. Desirability of the Case.

These cases were not undesirable and therefore this factor is not significant.

### 11. Nature of Professional Relationship With Client.

Plaintiffs have been represented by these attorneys for a substantial period of time. Dyke has been a client since 1971.

### 12. Award in Similar Cases.

An award of fees under the Economic Stabilization Act is of first impression in this district. In *Evanson v. Union Oil of California*, 4 C.C.H. Energy Management ¶ 26,417 (D.Minn.1980), the court approved a

settlement of $2,750,000.00, plus $800,000.00 in attorneys' fees. While there was no discussion of the reasonableness of the fee award, the figures are illustrative of proportional relationship in an overcharge case.

13. Efforts to Bring the Matter to a Prompt and Reasonable Conclusion.

A lawyer has a continuing duty to analyze positions taken and to determine whether they are legally sound. A lawyer must evaluate whether positions are unfairly taken and will unreasonably prolong litigation. The effort a lawyer expends to expeditiously accomplish a result for the client is an important consideration.

Although resolution of these cases did not come swiftly, plaintiffs' attorneys worked efficiently and expeditiously and in a timely and cooperative manner. Such attributes should be rewarded when combined with successful results.

### CONCLUSION

I hold that reasonable awards of fees in these cases, allocated *pro rata* according to plaintiffs' counsels' affidavits of requested fees, are as follows:

| Dyke | — | $385,500 |
| Colvin | — | $173,500 |
| Fletcher | — | $191,000 |

The Clerk is directed to enter judgment for these amounts. Plaintiffs shall submit their cost bills to the Clerk.

IT IS SO ORDERED.